[No. 4056.]

THE PEOPLE EX REL. L'ABBE ET AL. v. THE DISTRICT COURT OF LAKE COUNTY AND FRANK OWERS, JUDGE.

1. JURISDICTION—INJUNCTION TO RESTRAIN COMMISSION OF CRIME.
Courts of equity have no jurisdiction by injunction to restrain the commission of criminal acts which do not violate some personal or property right.

2. SAME—PROHIBITION.
Where it appears from the face of a complaint for writ of injunction to restrain the commission of a criminal act, that the court assumed unwarranted jurisdiction, or exceeded its legitimate powers in issuing the injunction, and the persons enjoined are without any

other speedy and adequate remedy, the supreme court will by writ of prohibition compel the lower court to desist from enforcing its order or proceeding with the further consideration of the case.

3. Same—Pleading.

A complaint for writ of injunction to restrain gambling in a city which fails to show that the conduct of the defendants in any way injures the property or property rights of complainant, but seeks to restrain gambling because of its corrupting and vicious influences upon the morals of the community, fails to state a cause cognizable in a court of equity.

4. Jurisdiction—Enforcing Penal Laws by Injunction.

The fact that the public officers refuse to perform their duty in enforcing the penal statutes of the state, constitutes no ground for the interference of a court of equity to enforce such statutes by injunction.

5. Jurisdiction—Writ of Prohibition.

The writ of prohibition is not a writ of right, but the granting of such writ rests in the sound discretion of the court. The jurisdiction of the supreme court to issue a writ of prohibition is conferred by the constitution and is not dependent upon the statute.

6. Same—Appeals.

The mere fact that an appeal lies from the final judgment in a cause is not conclusive against the right to issue a writ of prohibition. The writ may issue notwithstanding the right of appeal, if in the judgment of the court the remedy by appeal is not plain, speedy and adequate.

*Original Proceeding.*

Mr. Charles Cavender, Mr. John A. Ewing and Mr. Joseph W. Taylor, for petitioners.

Messrs. Patterson, Richardson & Hawkins, for respondents.

Per Curiam. Mary Henderson, president of the Leadville Women's Christian Temperance Union, as such president, and for herself as an individual, and all others similarly situated, instituted an action in the district court of Lake county against G. A. L'Abbe and some forty others, to restrain gambling in the city of Leadville. The grounds upon which she predicates her right to this relief are, in substance as follows:

That she is a citizen and resident of the city, and a property owner therein, and is interested in the moral, material and financial welfare of said city; that she is the mother of two boys now reaching manhood, and is interested in their moral welfare; that she is president of the Leadville branch of the Women's Christian Temperance Union, an organization having for its object, among other things, the preservation and protection of the morals and character of the people of the city of Leadville; that said organization has a reading room in said city, and that the unlawful practices complained of are being committed within a few doors of its reading room; that the population of said city is composed of men, women and children, aggregating about fifteen thousand; that it is to her interest that said city be made, so far as possible, a peaceable, law loving and order abiding community, to the end that the husbands and fathers may not be led astray by the unlawful devices and practices carried on by the defendants, and that her moral and financial interests may be protected; that the defendants are the owners, and engaged in the operation, of gambling rooms at various localities in the city, used for the purpose of gambling openly, in direct violation of the statutes of the state of Colorado, and to the detriment of the well-being and good order, and to the deterioration of the moral tone, of said community, and the detriment and destruction of plaintiff's financial and moral interests; that the sheriff of Lake county, the district attorney of the fifth judicial district, and the police, and other city officers, in violation of their official duty refuse to interfere with such gambling, or in any manner enforce the laws of the state of Colorado, or the ordinances of the city of Leadville, relating thereto; that by reason thereof, the plaintiff and all other good citizens are without any remedy at law, and are obliged to stand by and see their property depreciate, and the morals of the community constantly deteriorate by reason of the lawless acts of defendants; that the gambling complained of, and the renting of houses for such purposes, constitutes a common nuisance, and one which

materially injures the public, and this plaintiff's special interests as well, and is being carried on in the immediate vicinity of where plaintiff resides and lives; that the order and well-being of the community, and the protection of the lives and property of its good citizens, imperatively demand that said gambling practices shall at once be stopped, and the common nuisance of gambling be abated in said city; and to this end, invokes the equitable interposition of the court.

Upon the filing of the complaint, a temporary injunction was issued, *ex parte*. A demurrer to the complaint was interposed and overruled, and a motion to dissolve the injunction denied; whereupon the relators applied to this court for a writ of prohibition to restrain respondents from further proceeding with the case. The respondents resist the application upon the ground that the district court, having jurisdiction in equity in a proper case, to enjoin the commission of a criminal offense, and the complaint attempting to present such a case, its sufficiency cannot be inquired into in this proceeding; and the question as to whether or not the court below erred in granting, or refusing to dissolve, the writ, can only be determined on writ of error, after final judgment is rendered in the cause.

The logic of this contention is, that because the district court is vested with jurisdiction to issue injunctions, its right to exercise such power in a particular case cannot be inquired into on an application for a writ of prohibition, or its action interfered with except on appeal or by writ of error, notwithstanding it clearly appears from the facts alleged that no grounds for equitable interference existed. To this we cannot agree. While it is undoubtedly true that a court of equity has jurisdiction by injunction to prevent the violation of public law when necessary to prevent an irreparable injury to personal or property rights, it is equally true that it is not within its jurisdiction to prevent a criminal act, merely because it is criminal, and when it in no way violates a property or civil right; and before such jurisdiction can be exercised,

it should be made to appear, from the facts and circumstances of the particular case, that it is one in which the equitable interposition of the court may be properly and legitimately invoked; and in the absence of such a showing, the court has no authority to hear and determine that particular case. As was said by this court in *Bassick M. Co. v. Schoolfield*, 10 Colo. 46:

" Jurisdiction in the court is power to hear and determine the particular case involved. If this power to hear and determine the particular case does not exist in the court in point of law, then there can be no jurisdiction in the case."

If, therefore, it appears upon the face of the complaint itself, that the court below assumed unwarranted jurisdiction, or exceeded its legitimate powers, in issuing the injunction complained of, and the defendants are without any other speedy and adequate remedy through the ordinary modes prescribed by law, we entertain no doubt of our power and duty to compel the respondents to desist from further enforcing the order, or proceeding with the further consideration of the case, and to this end grant a writ of prohibition.

While the complaint is very voluminous, we think it fails to state a case cognizable in a court of equity. While it contains general averments that the plaintiff is the owner of property (without in any way describing its character or situation) and that the gambling complained of, and the renting of houses for that purpose, constitute a common nuisance which injures the public, and the plaintiff's special interests as well, yet it fails to disclose any such special injury to herself as would justify her in maintaining this action; or any injury that is not common to the entire community; and, in fact, fails to show that the conduct of defendants in any way injures property or property rights. But, from its whole tenor and import, its manifest purpose is to restrain the commission of the crime of gambling in the city of Leadville, because of its corrupting and vicious influences, and its deteriorating effect upon the morals of the community. In other words, it is a plain attempt, through the aid of a court

of equity, to prevent the violation of the penal statutes of the state, and to confer upon that court the administration of the criminal law, solely because the sworn officers neglect or refuse to perform their duty in this regard. The failure of these officers to perform their duty constitutes no ground for the interference of a court of equity. As was said in *State v. Patterson*, 14 Texas Civil App. Rep. 465, a case also involving the right of a court of equity to restrain the crime of gambling:

" That the law against this offense is not enforced and observed is no ground for the interposition of a court of equity, for, as has been observed, such a court has no jurisdiction to restrain the commission of crime, nor to enforce moral obligations or the performance of moral duties as such, nor can it rightfully interfere with the performance of an illegal act merely because it is illegal, in the absence of an injury to property or civil rights."

The case presented by the complaint is one, if the facts alleged therein are true, where the defendants are guilty of a criminal offense pure and simple, for which the criminal law furnishes ample remedy, and the only one that courts are required to enforce. There are over forty defendants joined in an action, each charged with the separate and distinct offense of carrying on gambling, or renting houses for that purpose, at different localities in the city. Each is answerable only for his individual conduct, and yet he can obtain no final adjudication of his case, as these petitioners have elected to do upon demurrer to the complaint, but must suffer the delay incident to the making up of the issues and the trial of the cause as to the other defendants. It is therefore manifest that there is no other plain, speedy or adequate remedy that the petitioners can avail themselves of, and in our opinion, this is a proper case for granting the relief prayed for Let the writ of prohibition issue accordingly.

PETITION FOR REHEARING.

PER CURIAM. The object of a petition for rehearing is to

point out mistakes of law or fact, or both, which it is claimed the court has made in reaching its conclusion. Argument, if any, in support of the petition should be devoted to the enlightenment of the court in respect to such contention. That counsel for the unsuccessful party was surprised or professes astonishment, at the result of the original hearing, does not constitute a ground for reopening the cause, nor is it persuasive that error has been committed. That an attorney may do full justice to his client's cause great latitude necessarily should be allowed as to the scope and character of his argument, concerning which this court has always been considerate. But the paper filed herein, designated as a petition and argument for rehearing, so signally belies its name, and so flagrantly transcends the limits of permissible argument that we pause for a moment to condemn it. The attempt therein made to put this court in the false attitude of sanctioning the offense of gambling cannot be passed by without receiving a merited rebuke. It is peculiarly the duty, and should be the pleasure, of every attorney to uphold the courts in their difficult task of administering justice; and it is altogether reprehensible for a member of the bar to embody in public records unfounded charges, or subtle suggestions against them, whose only tendency, even though such was not their purpose, is to undermine the confidence of the people in their chosen tribunals.

Speaking generally, a judicial opinion is not the place for airing or emphasizing the personal views of members of the court on the ethical phase of pending questions. If public morality, or the advancement of a certain legislative policy' is the object of a valid statute, it is the duty of the court to enforce it in the manner provided by the lawmaking power, irrespective of the notion of the judges as to the wisdom of the enactment, or the appropriateness of the remedy. When this court prohibits an inferior tribunal from proceeding in violation of law against those charged with gambling, or restricts such tribunal to the procedure which the constitution and statutes have provided for that purpose, it cannot

justly be charged with countenancing, even indirectly, the offense of gambling, any more than can a similar charge with fairness be brought against an attorney that he upholds crime when he defends a criminal, or that a court sanctions murder when, for manifest error of the trial court, it reverses a judgment of conviction of that crime. It is not only puerile, but wrong, in either case even to insinuate so groundless an accusation. Distasteful as it is to us personally, and much as we dislike thus to characterize what this record exhibits, our sense of duty to the profession, and the maintenance of the dignity of the court, and our own self respect, require it. Less we could not have said; more we refrain from saying.

No argument is now presented which was not made, and but one authority cited that was not before the court, at the original hearing. *Blagen v. Smith*, 56 Pac. Rep. (Ore.) 292, is said to be, except as to the specific description of property in the complaint, not so strong as the case at bar for equitable relief, which was there granted, but which in effect we have said was not proper in the injunction suit whose further prosecution we have stopped. In the Oregon case an injunction was granted to plaintiff restraining the use by the defendant of the latter's real estate for a bawdy house, on the ground that such use constituted a public nuisance, and as such, inflicted upon the plaintiff, in his property right, an injury different in kind from that which resulted to the public generally. Even assuming that the object of the prohibited injunction action was to protect the property right of the plaintiff therein, which, as we have already said and shall hereinafter repeat, was not its object at all, the difference between it and the Oregon case is very marked. Here there is no showing or claim that plaintiff's injury is any different, either in degree or kind, from that suffered by every other citizen and property holder in Leadville. There the evidence, supporting that very claim, was that plaintiff's property was so depreciated in value and his enjoyment thereof so interfered with, that his resultant injury was different in kind from that which all others sustained. This

material dissimilarity in the facts, and the very essential difference in the respective objects of the several actions appear from this extract from the opinion:

"All property in a city is affected by the maintainance of a bawdy house, just in proportion to its contiguity thereto, and the damage which such property sustains, while differing in degree, does not differ in kind; and, such being the case, the owner of any such property affected in the same general way as other property therein could not successfully invoke equitable relief to enjoin its continuance. But where, by reason of the proximity of such property to the public nuisance, disgusting scenes and sounds shock the sense of those whose property, or the enjoyment thereof, is affected thereby, the injury sustained is necessarily different in kind from that suffered by the public at large, and, this being so, such persons are entitled to an injunction restraining the same."

Moreover, the reasoning of that opinion is authority for the principle enunciated in the original opinion in the case at bar; that, where the object of the action is solely to enjoin the commission of a crime and not the protection of a property right, the case is not one of equitable jurisdiction.

Further examination of the complaint in the injunction suit but serves to strengthen our conviction that the claim made in argument that its object was to protect plaintiff's property is utterly unfounded. Such position, we venture to assert, could plaintiff herself be heard aside from the allegation of her pleading, would be emphatically repudiated as placing her in a false light. And when we read her complaint, the only expression of her object which we are authorized to consider, it is clear that the real and only object she had in view was to put a stop to public gambling in Leadville by the aid of a writ of injunction. Had her desire been to protect her property from irreparable injury different in kind from what others suffered, she would have had no difficulty in indicating the same to counsel so that the complaint would have been cast upon that theory. And if such was her object, why did astute counsel, at such great length

in the complaint depict the demoralizing effect of open gambling upon the public morals, and why was a dragnet sent out to bring in the entire gambling fraternity, whereas, in any event and in the very nature of things, only such establishments as were in close proximity to her property could be enjoined, and the criminal acts, if committed, were several and not joint? If the required kind of injury was inflicted, plaintiff was entitled to an injunction, irrespective of the effect of gambling on public morals.

True it is, there are indefinite allegations of injury to plaintiff's property, but we are satisfied that these were inserted as a subterfuge under cover of which counsel might avoid the effect of the argument against a court of equity restraining crime, and, as it were, a hook upon which a court so disposed might hang an excuse for favorable action. The object of that action was solely to enjoin public gambling, and not to protect a property right. Therefore, not only did the district court greatly abuse its discretion in granting a temporary writ of injunction, but would intensify the wrong by perpetuating it. But more than this, it had no jurisdiction, under the complaint as filed, to grant equitable relief. It was not a case of defective pleading. The case as made belongs to a class of which a court of equity has no cognizance, and should it proceed further, its orders would be entirely void.

We have adverted to a misjoiner of parties defendant, not that we may pass upon any such question in this proceeding, but as a strong circumstance tending to show the nature of the action, and as quite conclusive proof of a lack of good faith on the part of plaintiff, if her object was really such as her counsel would now have us believe. A plaintiff must go into equity with clean hands; if not, he is not entitled to equitable relief, which otherwise he might ask.

The granting of a writ of prohibition rests in the sound discretion of the court. The writ is not a writ of right. Aside from the considerations mentioned, counsel say we should withhold the writ upon the grounds that an appeal lies from

the final judgement, and that the sound discretion of the court may not be invoked at the instance of violators of the law.

In this connection counsel cites section 297 of the code which provides that "the writ shall be granted in all cases where an inferior tribunal * * * has exceeded the jurisdiction or greatly abused the discretion of such tribunal; * * * and there is no appeal, nor in the judgment of the court any plain, speedy and adequate remedy." This language in its terms applies to *certiorari*.

Our jurisdiction in the premises, being directly conferred by the constitution, does not depend upon the statute; but if the procedure in this court was subject to the code provision quoted, the mere fact that an appeal lies to the final judgment is not conclusive against the right to issue the writ. Notwithstanding that fact, it may be granted, if, in the judgment of the court, the remedy by appeal is not plain, speedy and adequate. An appeal is not always, and in all circumstances, adequate. The code does not mean that the writ shall not issue except when the two contingencies combine, of an absence of appeal and inadequate remedy. The language is, "No appeal, *nor* plain, speedy and adequate remedy." This means if, in addition to the lack of jurisdiction, either element, the absence of an appeal or inadequacy etc., of remedy, is present, the writ of prohibition may go.

We appreciate what force there is in an argument upon the second ground, and were not expeditious in issuing the writ. Gambling, it is true, is a misdemeanor under the laws of this state, but that fact, and the additional one that we are opposed to it, constitute no reason why we should compel gamblers to submit to a court of equity the question of their guilt or innocence upon a charge of gambling brought against them, rather than to a trial by jury upon an indictment regularly preferred. To a gang of robbers, burglars, holdups, or saloon keepers selling liquor without a license, against whom an inferior court of equity, in the absence of a statute expressly authorizing such remedy, was about to issue a writ

of injunction restraining them from future offenses, we could with equal right and fairness, say: "We are opposed to your nefarious practices, therefore we will let the lower court proceed in its threatened arbitrary course, though it is squarely in violation of your constitutional rights."

Suppose the defendants are gamblers; should we, on that account, take from them the protection the law throws around every citizen, guilty and innocent alike? Does that fact alone, irrespective of the consideration of plaintiff's property rights, authorize a chancellor to determine their guilt merely for the purpose of enjoining them from continuing criminal practices? Should we sit supinely by when appealed to, and permit an inferior court to proceed, wholly without jurisdiction, to inflict summary punishment for a violation of its illegal orders? Gamblers, as such, are not entitled to the protection of the law, it is true. Neither are murderers nor thieves the objects of the law's solicitous care; but one charged with any crime is, by the constitution and laws of the state, entitled to have his case tried by a jury of his peers, and not by a single judge, however exalted such official may be. We have already said that where an act, the commission of which constitutes a crime, also produces a certain kind of injury to the property rights of a citizen, it may be enjoined, although it does constitute a crime; not upon the latter ground, but upon the ground that the act injures a private property right. We know of no case in the books where a similar perversion of justice has occurred, where such an unwarranted abuse of the process of injunction has been perpetrated, as was threatened in this case in the district court.

However desirable or convenient it might appear to put a stop to criminal practices by invoking the extraordinary writ of injunction, we cannot permit the constitutional and statutory rights of individuals to be thus violated. We cannot allow the writ of injunction to usurp and take the place of the orderly processes of the criminal law which the constitution and the legislature have provided. Such a course as the district judge adopted, if approved by us, would make of

a single judge both court and jury in the trial of a criminal action whose sole object is to punish one for committing a crime; and if a defendant refused to obey his injunctive order, there could be no redress from a sentence for contempt imposed for its violation. Such an unlimited power is too great to confer, at least it has not yet been intrusted, to any judge or court by the constitution or laws of this state. Indeed, the judge of the district court below, who, on *ex parte* hearing, granted the temporary writ, correctly apprehended the object of the action when, in passing upon defendants' application to dissolve the temporary writ, in apparent excuse for its denial, he remarked, *inter alia*, that " the use of the writ of injunction as a remedy has lately been largely extended. * * * If ever a case appealed to the conscience of the chancellor this case should do so. The officers of the law refuse to act, the property rights of the plaintiff are being injured and what is of far more importance the morals of her children are in danger." He is careful not to say that the case as made is one of that class where the writ lies to protect plaintiff from an injury to her property of the kind which invokes this remedy, but he places it upon the higher ground of the protection of morals. If upon the former ground, he would not have lacked for judicial decisions to authorize his action. But he seemed to realize that there was no authority for his course, as we infer from this significant passage in his opinion:

" If it be true that no direct precedent can be found, it is time that one should be created; and, as Murat declared himself to be his own ancestor, this court will be its own precedent. It is time the increased use of injunctions in certain directions should at least be so extended that relief may be afforded in cases like this."

Whether the ancestor was proud of his offspring, or the maker of this precedent is entitled to credit for its creation is not strictly a legal question. We can only add that this remarkable declaration must speak for itself. As for this court, its highest obligation is to observe and enforce the con-

stitution, whose creature it is, and it is contrary to the conception of duty entertained by its members to permit precedents to be made in defiance of the constitution.

The petition for rehearing should be denied, and it is so ordered.