### No. 8494.

HEBER ET AL. *v.* PORTLAND GOLD MINING COMPANY ET AL.

INJUNCTION—*To Restrain Crime.* Courts of equity are not equipped for the administration of criminal law, and attempts to extend the jurisdiction to that field, should receive no favor.

Where the direct and immediate effect is to protect property, an injunction may go, even though incidentally it enjoins the perpetration of a crime; otherwise where such result is indirect and inferential only.

Bill to restrain defendants from buying ores known to be stolen. It was contended for plaintiff that enjoining the purchase, would indirectly restrain the theft. The lax administration of the criminal law, and the difficulty proving the theft of the minute quantities often stolen, was also urged.

Considering that if the theft of one class of property may be enjoined, the owners of other properties liable to similar depredations would be entitled to the same relief; that the awarding of the equitable relief prayed for must be attended by the same difficulties as the prosecution of the theft, and would in effect be a denial of the right of trial by jury, to one accused of crime, the injunction was denied.

*Error to Teller District Court, Hon. W. S. Morris, Judge. En banc.*

Mr. E. G. VANATTA, for plaintiffs in error.

Mr. E. J. BOUGHTON, Mr. N. WALTER DIXON, Mr. THOMAS J. DIXON, for defendants in error.

Opinion by Mr. Justice Teller:

THE defendants in error brought suit against the plaintiffs in error, and several others who do not appear here, for injunctive relief.

The complaint alleged that the plaintiffs were the owners and operators of mining and milling property in the Cripple Creek Mining District; that in said district there were many other persons and corporations owning and mining their properties in the same general way as were the plaintiffs; that in the said operations the plaintiffs and the mine operators have expended many million dollars; that the said mining properties contain gold bearing ores, some of which are what is commonly known as "high grade" ores, of great value; that said high-grade ores may be distinguished by their physical appearance; that since the beginning of mining in said district they have been subject to theft by employes of plaintiffs and the other mine owners, to the amount of millions of dollars; that large numbers of men are employed in said mines; that such thefts of ore are profitable only because of the existence of a class of assayers whose principal business is dealing in such stolen

ores; that the defendants belong to said class of "high-grade assayers," and are engaged solely in buying ores which they know to have been stolen; that they encourage said employes to steal said ores, and aid and assist one another in said unlawful acts, and in escaping detection therein; that they buy also from said employes precipitates, amalgam, and bullion, known to have been stolen; that they do not comply with the law which requires the purchaser of ores to keep a book in which shall be recorded all the particulars of such purchases; that, unless restrained by order of court, they will continue to buy stolen ores; that, by reason of the fact that each theft is usually of a small quantity of ore, it is almost impossible for the plaintiffs to detect it at the time; that they constitute repeated trespasses that would involve plaintiffs in a multiplicity of suits to recover the amounts taken; that defendants are insolvent; that plaintiffs have no adequate remedy at law; and that defendants by their acts inflict irreparable injury upon plaintiffs.

The prayer is that defendants be enjoined "from carrying on the business of purchasing knowingly stolen ores, concentrates," etc., in the said district, "and from purchasing, receiving or in any way handling or dealing with, directly or indirectly, in said mining district, any ores, etc., * * * , which they may know, or have reason to believe, were stolen"; and for an accounting for all stolen ores theretofore purchased.

A demurrer to the complaint was overruled, and, on defendants' election to stand upon the demurrer, judgment was entered against the plaintiffs in error, and other defendants who were in default, perpetually enjoining and restraining them "from carrying on the business of purchasing knowingly stolen ores, concentrates, precipitates, amalgam or bullion which they or he may know, or have reason to believe, were stolen."

The overruling of the demurrer is assigned as error.

The principle ground of demurrer argued is that the complaint does not state facts constituting a cause of action.

It is objected that the purpose of the suit is to enjoin the commission of a criminal offense. It is pointed out that our statutes make the buying of stolen ore a felony, and that they provide an elaborate system of recording every purchase of ore, all of which provisions are intended to accomplish the precise purpose at which this suit aims.

Defendants in error reply that equity has jurisdiction to enjoin an action, even though it be criminal, if, at the same time, it protects personal or property rights. The question here presented, then, is: Do the facts alleged present a case falling within the principle last stated?

It is not to be questioned that, where the direct and immediate purpose of a suit in equity is to protect property, an injunction may issue, although incidently it enjoins the perpetration of a crime.

In the case at bar, plaintiffs below allege that, if the sale of stolen ores be prevented, the stealing of ores will thereby be discouraged, and plaintiffs' losses to that extent be decreased. No case is cited in which the jurisdiction of equity is sustained to protect property in this indirect manner.

In the case of *In re Debs,* 158 U. S. 564, 30 L. Ed. 1092, 15 Sup. Ct. 900, on which defendants in error rely, the effect of the injunctive order was direct. The defendants in that case were enjoined from obstructing interstate commerce and the carrying of United States mails. It is not authority for the proposition maintained here by defendants in error.

They also rely on *People ex rel. v. District Court,* 26 Colo. 386, 58 Pac. 604, 46 L. R. A. 850, and quote from it as follows:

"Courts of equity have no jurisdiction of injunction to restrain the commission of criminal acts *which do not violate some personal or property right.*"

It is argued that the violation of plaintiffs' rights in this case is such as to bring it within the italicised portion of the above quotation. We think, however, that, for the reason above given, the case does not apply. The protection

of property rights in this case appears only by a course of reasoning, to-wit: That, if these defendants are prevented from buying stolen ores, the employes of plaintiffs who steal ore, finding it no longer profitable, will cease their thefts. The results of the injunction are, therefore, not determinate, but inferential only. The only actual and direct result is the enjoining of a criminal offense.

Defendants in error rely also upon *Kirby v. U. P. R. R. Co.*, 51 Colo. 509, 119 Pac. 1042, Ann. Cas. 1913 B. 461, in which railroad ticket brokers were enjoined from pur-- chasing special rate tickets. That case, however, is not in point, since it dealt, not with criminal offenses, but with acts which the court held to be fraudulent.

The injunction directly protected plaintiffs' rights.

Every theft is an invasion of some one's property rights. The fact that in this instance an injunction is sought only against a certain class is not material. There are other lines of business in which thefts are extremely common and difficult to detect. If one class may be enjoined either directly or indirectly from stealing, other classes may be treated in the same manner. Modern penal laws are in- tended both to punish the criminal, and to deter others from perpetrating like offenses. The purpose of the law, then, is to accomplish the very same end which the injunc- tion would accomplish, according to the reasoning of de- fendants in error.

Where a criminal prosecution will effectually redress the plaintiff's wrong, he has no remedy in equity. 22 Cyc. 775.

The fact that the criminal statutes are not properly en- forced was urged as a ground for injunction in *People v. District Court*, supra. This court, in discussing that charge in the complaint, said:

"It is a plain attempt, through the aid of a court of equity, to prevent the violation of the penal statutes of the state, and to confer upon that court the administration of the criminal law, solely because sworn officers neglect or refuse to perform their duty in this regard. The failure

of these officers to perform their duty constitutes no ground for the interference of a court of equity."

If it is so difficult to detect these thefts of ore—and, therefore, the criminal law is not enforced—there is no reason apparent why it would not be equally difficult to show a violation of the injunction, unless dependence be placed upon that part of it which enjoins the purchasing of ore which the buyers *have reason to believe have been stolen.* In such a case, one cited for contempt would not know what evidence he ought to be prepared to meet. It would open a wide field of conjecture and speculation, and make it possible for the court to inflict a penalty on grounds upon which no two persons might hold the same view.

Another effect of the injunction would be to deny one cited for contempt a trial by jury in what is in effect a criminal case. In other words, a court, without a jury, might convict persons of an offense which the statutes of the state make a felony, and, upon conviction, might inflict such punishment as to the court seemed proper.

This fact alone should limit the right to an injunction to cases in which its direct effect is the protection of rights or property, and where it is necessary to such protection. It is a truism that courts of equity are not fitted for the administration of criminal law, and attempts to extend their jurisdiction to that field, in any degree, should receive no favor from those whose duty it is to preserve the landmarks of the law.

The plaintiffs have as adequate a remedy in the premises as have others whose property is liable to be stolen, and the complaint does not state a cause of action.

The demurrer should have been sustained.

The judgment is therefore reversed.

Garrigues, Allen and Bailey, JJ., dissent.