**BASELINE FARMS TWO, LLP, a Colorado limited liability partnership; and Developing Equities Group, LLC, a Colorado limited liability company, Plaintiffs–Appellants,**

v.

**Steven HENNINGS and Chris Hennings, Defendants–Appellees.**

No. 00CA0445.

Colorado Court of Appeals, Div. II.

May 10, 2001.

Richard M. Borchers, P.C., Richard M. Borchers, Westminster, CO; R.J. Wittenbrink, P.C., R.J. Wittenbrink, Lakewood, CO, for Plaintiffs–Appellants.

Joseph A. Davies, P.C., Joseph A. Davies, Greenwood Village, CO, for Defendants–Appellees.

Opinion by JUDGE DAILEY

In this slander of title, trespass, improper lien, and abatement of nuisance action, plaintiffs, Baseline Farms Two, LLP (Baseline Farms), and Developing Equities Group, LLC (DEG), appeal the trial court's order dismissing their motion to preliminarily enjoin defendants, Steven and Chris Hennings, from causing effluent wastewater to be discharged onto certain real property. We affirm.

## I.

Defendants own a commercial campground across a highway from open property owned by Baseline Farms, which DEG wants to purchase and develop as a residential area.

The campground, which was previously part of the KOA campground system, has, since 1971, been equipped with a private wastewater treatment facility licensed by the Colorado Department of Public Health and Environment (CDPHE). The facility discharges its effluent wastewater into a ditch,

which crosses the campground and runs under the highway onto Baseline Farms' property.

In 1998, defendants recorded a notice claiming a prescriptive easement burdening Baseline Farms' property. In an affidavit filed with that notice, the predecessor in title to both the campground and Baseline Farms' property averred, among other things, that he had granted to the campground owners an easement in that part of the ditch extending onto what is now Baseline Farms' property.

In September 1999, plaintiffs filed the present action, seeking damages and injunctive relief. In their complaint, they alleged, among other things, that: (1) defendants no longer had the right to discharge effluent wastewater onto Baseline Farm's property; (2) defendants' effluent wastewater constituted a health hazard and public nuisance; and (3) defendants' discharge of effluent wastewater unreasonably and substantially interfered with their use of the property.

Along with their complaint, plaintiffs filed a motion for a preliminary injunction. At a hearing held in January 2000, plaintiffs presented testimony from an expert in environmental engineering, defendant Steven Hennings, and representatives of Baseline Farms and DEG.

The expert related the results of tests her firm had conducted on effluent wastewater found on Baseline Farms' property on three different days: once in 1997, once in the summer of 1999, and once in the fall of 1999. On all three occasions, the wastewater appeared to be standing still, and three different measurements were higher than those authorized by the CDPHE permit.

Of particular concern was the fecal coliform count, which reflects the presence of harmful bacteria such as e coli, cryptosporidium, and giardia, and which was consistently much higher than that allowed under the CDPHE permit. In the expert's view, this could pose a significant health hazard for persons coming in contact with the wastewater.

Upon cross-examination, however, the expert acknowledged that ground and surface water could enter the ditch and create moving water and that, because CDPHE standards were expressed in terms of 30–day averages, it was possible that, over a 30–day period, the effluent wastewater could meet those standards. Further, because of the possibility that contaminants could enter the ditch from other sources, the expert was unable to say that the campground's wastewater treatment plant was not working correctly.

The expert acknowledged that the campground's wastewater treatment plant had been in compliance with CDPHE requirements and that she was unaware of any regulatory actions taken with respect to it within the past two years.

Defendant Steven Hennings testified that Baseline Farms had refused him permission to enter its land to clean out the ditch.

Baseline Farms' representative acknowledged that Baseline Farms had never done anything to clean the ditch in the 10 years it owned the property.

Baseline Farms' and DEG's representatives testified that the presence of standing, smelly, and unhealthy wastewater on the property would be a detriment to building and selling houses in the area. DEG's representative acknowledged, however, that for at least another year there would be no significant impact on its planning or builders.

Following plaintiffs' evidence, the trial court granted defendants' motion to dismiss plaintiffs' request for preliminary injunction. According to the court, plaintiffs had failed to show a real, immediate, and irreparable injury. The trial court noted that: (1) effluent wastewater had been running onto Baseline Farms' property since at least 1990; (2) it believed state health officials would have looked into the situation long before then "if it were as bad as we have all been led to believe this morning"; and (3) DEG's interests would not be endangered "until 12 months from now."

## II.

■ On appeal, plaintiffs contend that the trial court erred in requiring them to prove a

danger of irreparable harm in order to obtain preliminary injunctive relief. We disagree.

■ In order to obtain a preliminary injunction pursuant to C.R.C.P. 65(a), a party must establish: (1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable harm; (3) that it has no plain, speedy, and adequate remedy at law; (4) granting the preliminary injunction will not disserve the public; (5) the balance of equities favors the injunction; and (6) the injunction will preserve the status quo pending a trial on the merits. *Rathke v. MacFarlane*, 648 P.2d 648 (Colo.1982). *See also Atmel Corp. v. Vitesse Semiconductor Corp.*, —— P.3d ——, 2001 WL 125909 (Colo.App. No. 98CA0586, Feb. 15, 2001).

Plaintiffs assert, however, that this legal standard is inapplicable where private parties act as private attorneys general to enforce state health and water quality control standards pursuant to §§ 25–8–611 and 25–8–612, C.R.S.2000. In support of their position, plaintiffs rely on *Kourlis v. District Court*, 930 P.2d 1329, 1335 (Colo.1997), where the supreme court recognized that "[s]pecial statutory procedures may supersede or control the more general application of a rule of civil procedure."

In *Kourlis,* a trial court had denied the request of the Colorado Commissioner of Agriculture to preliminarily enjoin the operation of an unlicensed pet care facility, because the Commissioner had failed to establish three of the *Rathke* requirements. On appeal, the supreme court held the *Rathke* requirements inapplicable, in part because, unlike in *Rathke, Kourlis* involved "a statutory injunction pursuant to a statutory scheme carried out by an administrative agency," *Kourlis v. District Court, supra,* 930 P.2d at 1333 n. 10, and, in part because that statutory scheme explicitly dispensed with the requirement that the Commissioner prove irreparable injury. *See* § 35–80–111(3), C.R.S. 2000.

In *Kourlis,* the supreme court also acknowledged that it had, on one previous occasion, implied the negation of an irreparable injury requirement. In *Lloyd A. Fry Roofing Co. v. State Department of Health Air Pollution Variance Board,* 191 Colo. 463, 553

P.2d 800 (1976), the court considered a provision of the Colorado Air Pollution Control Act authorizing state officials to seek injunctions for failure to comply with cease and desist orders. Because the statute there did not require a showing of irreparable injury, and because the state was attempting to enjoin acts "imbued with great public importance," the court held that no such showing need be made for a preliminary injunction. *Lloyd A. Fry Roofing Co. v. State Department of Health Air Pollution Variance Board, supra,* 191 Colo. at 473, 553 P.2d at 808.

The present case is distinguishable from both *Kourlis* and *Lloyd A. Fry Roofing.* Unlike the statute at issue in *Kourlis,* §§ 25–8–611 and 25–8–612 do not explicitly dispense with an irreparable injury requirement; and, unlike either *Kourlis* or *Lloyd A. Fry Roofing,* this case does not involve an enforcement action undertaken by a governmental entity, or even an action undertaken pursuant to a special statutory procedure.

Pursuant to § 25–8–607, C.R.S.2000, governmental entities are authorized to seek preliminary injunctions in order to enforce Colorado's Water Quality Control Act.

Section 25–8–611(1) provides that the Act is not intended to create or expand private rights:

> The factual or legal basis for proceedings or other actions that result from a violation of any control regulation inure solely to, and shall be for the benefit of the people of, the state generally, and it is not intended by this article, in any way, to create new private rights or to enlarge existing private rights. A determination that water pollution exists or that any standard has been disregarded or violated, whether or not a proceeding or action may be brought by the state, shall not create any presumption of law or finding of fact which shall inure to or be for the benefit of any person other than the state.

Section 25–8–612 provides that the Act also is not intended to abridge or alter existing rights:

(1) It is the purpose of this article to provide additional and cumulative remedies to prevent, control, and abate water pollution and protect water quality.

. . . .

(3) Nothing in this article shall abridge or alter rights of action or remedies existing on or after July 1, 1981, nor shall any provision of this article or anything done by virtue of this article be construed as estopping individuals, cities, towns, counties, cities and counties, or duly constituted political subdivisions of the state from the exercise of their respective rights to suppress nuisances.

Contrary to plaintiffs' contention, these provisions neither authorize injunctions nor create a private cause of action or right to proceed in the public interest. As pertinent here, all they do is recognize that: (1) no private rights have been altered, abridged, or lost by enactment of the Water Quality Control Act; and (2) water violation determinations may not be used to benefit anyone other than the state.

Because §§ 25–8–611 and 25–8–612 do not create a special statutory procedure for obtaining a preliminary injunction, the normal requisites under C.R.C.P. 65—including a showing of real, immediate, and irreparable injury apply.

To the extent that plaintiffs argue that the court nonetheless erred in assessing the issue of real, immediate, and irreparable injury, we again disagree.

■ The decision to grant or deny preliminary injunctive relief lies within the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless it is manifestly unreasonable, arbitrary, or unfair. *Board of County Commissioners v. Fixed Base Operators*, 939 P.2d 464 (Colo.App. 1997).

■ Here, the trial court's determination that plaintiffs failed to demonstrate a danger of real, immediate, and irreparable injury finds ample support in the record.

Plaintiffs' expert acknowledged that it was possible both that the wastewater treatment facility was working properly and that the effluent wastewater on plaintiffs' property could meet applicable regulatory standards if tested over the authorized 30–day period. She also acknowledged that, even though she would expect state and federal agencies to respond to serious health hazards, those agencies had not undertaken any recent regulatory action with respect to defendants' wastewater treatment facility. No evidence was presented that the effluent wastewater on Baseline Farms' property had caused any illness, or that there were any people or domestic animals in that locale that might come in contact with the effluent.

Regarding other possible injuries, plaintiffs' expert related that, although her firm did not test the soil in 1999, the 1997 test indicated that Baseline Farms' soil had not been significantly impacted by the effluent wastewater; and, DEG's representative acknowledged that it would experience no significant impact for at least another year.

Because there is evidence supporting the trial court's findings, we conclude that the trial court did not abuse its discretion in denying plaintiffs' motion for preliminary injunctive relief.

### III.

We also reject plaintiffs' contention that, in any event, the trial court should have decided that an easement by prescription can never be obtained if it creates a nuisance. *See City & County of Denver v. Consolidated Ditches Co.*, 807 P.2d 23, 38 (Colo.1991)("A court . . . should avoid [providing] an advisory opinion on an abstract proposition of law, particularly when the trial record is virtually devoid of any evidentiary basis for an ultimate legal conclusion.").

Accordingly, the trial court's order dismissing plaintiff's request for preliminary injunction is affirmed.

JUDGE JONES and JUDGE CASEBOLT concur.