**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF LOGAN, State of Colorado, Plaintiff–Appellant,**

v.

**Christopher VANDEMOER, Defendant–Appellee.**

No. 07CA1011.

Colorado Court of Appeals, Div. VI.

Aug. 7, 2008.

Rehearing Denied Sept. 25, 2008.

Law Firm of Anthony Melonakis, Anthony Melonakis, Denver, Colorado; Alan W. Samber, County Attorney, Sterling, Colorado, for Plaintiff–Appellant.

Brammer Law Office, P.C., Jay M. Brammer, Ray Ann Brammer, Sterling, Colorado, for Defendant–Appellee.

Opinion by Chief Judge DAVIDSON.

In this action for injunctive relief, plaintiff, the Board of County Commissioners of the County of Logan, appeals from the judgment dismissing its complaint against defendant, Christopher Vandemoer. We affirm.

The following facts are undisputed. Defendant is a farmer. He owns two adjacent quarter sections of land in Logan County, which are separated by a half mile of an unpaved and infrequently used county road. In 2003, defendant installed a linear sprinkler system for his fields that is approximately one-half mile in length and is set on wheels, which makes it mobile. Approximately seven times annually during the irrigation season of July through September, defendant moves his sprinkler system from one field to another, across the county road, a process that blocks the road for as long as eleven minutes. When doing so, defendant places two trucks on either end of the road with hazard lights to warn any oncoming traffic.

In September 2004, the board brought an action requesting a preliminary and permanent injunction to restrain defendant from moving his sprinkler across the intersecting county road. In its complaint, the board alleged three grounds for its request for injunctive relief: violation of a county resolution prohibiting agricultural sprinkler irrigation systems from being moved across public roads; creation of a public nuisance in violation of the board's "express and implied power over public roads"; and violation of section 43–5–301, C.R.S.2007, which provides for criminal sanctions for obstructing a highway.

After an evidentiary hearing, the trial court denied the board's request for a preliminary injunction, concluding "[t]hat there is no imminent damage to be avoided through injunctive relief." In support, the court noted that the board had an available remedy through criminal prosecution, and found that "[t]here is [a] minimal traffic hazard created by [defendant's] linear sprinkler system, he has taken suitable steps to avoid creation of any traffic hazard, minimal amounts of water are dropped on the roadway, and law enforcement authorities have been indifferent towards the enforcement of [section] 43–5–301."

Subsequently, upon defendant's motion to dismiss, and treating it as a request for summary judgment, the court dismissed the first two claims. In its ruling, the trial court adopted the facts found in the preliminary

injunction proceedings, including the finding, not disputed on appeal, that defendant's agricultural sprinkler system was an implement of husbandry. The court determined that the board lacked authority to regulate the use of an agricultural sprinkler on a county road "[s]o long as it does not spray water over the county road or otherwise damage the county road." The court also found the county resolution invalid on the ground that section 30–15–401(1)(h), C.R.S.2007, concerning county regulation of the movement of traffic, required enforcement by ordinance, not resolution.

The parties then filed cross-motions for summary judgment on the third claim. Granting defendant's motion, the court stated that the board had not offered any evidence of damage to the road caused by defendant's sprinkler and noted that the board had not provided any affidavit to contradict defendant's affidavits indicating that the road was "not so affected by his activities." The court concluded that "the movement of [d]efendant's sprinkler, under the circumstances of this case, does not represent a permanent or long-term hindrance to passage over [the county highway]."

The board then filed this appeal, claiming that the dismissal of its complaint was in error.

Our review of the trial court's grant of summary judgment is de novo. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo. 2004).

## I. Regulation by Resolution

The board's resolution prohibiting agricultural sprinklers on county roads, Resolution 2004–08, reads in part:

> Agricultural sprinkler irrigation systems shall not be moved across or operated in a manner that results in any portion of the assembled sprinkler system extending over public roads and highways, irrespective of whether such sprinkler system is operating at the time or not.

The board contends that the trial court erred when it dismissed its claim for relief based on defendant's alleged violation of Resolution 2004–08. Based on somewhat different reasoning, we agree with the result reached by the trial court. Specifically, defendant asserts, and we agree, that despite its broad authority over its roads, the county's prohibition of any movement onto a county road of an agricultural sprinkler system, an implement of husbandry, impermissibly conflicts with state interests. *See Negron v. Golder*, 111 P.3d 538, 542 (Colo.App. 2004) (court of appeals may affirm a trial court's dismissal on different grounds).

### A. County Authority over County Roads

■ Counties, as political subdivisions of the state, have those powers expressly or impliedly granted to them by the Colorado Constitution or the General Assembly. *See Bd. of County Comm'rs v. Bainbridge, Inc.*, 929 P.2d 691, 699 (Colo.1996).

■ Deriving both from statute and its general police powers, a county has broad powers to regulate public roads over which it has jurisdiction. *See Asphalt Paving Co. v. County Comm'rs*, 162 Colo. 254, 262, 425 P.2d 289, 294 (1967) ("Due to the varying situations which need to be regulated in our complex system of municipal, county, state and federal highways, obviously only local authorities are in a position to determine which non-federal or state streets in a residential area need to be regulated in a 'reasonable' manner, or would know about these problems in any detail."); *Lewis v. Lorenz*, 144 Colo. 23, 26, 354 P.2d 1008, 1010 (1960) ("The statutes are conclusive of the fact that the county commissioners have the sole right to authorize and control the use of the highway ... whether the user be an abutting owner or otherwise."); *Bd. of County Comm'rs v. Cottingham*, 134 Colo. 156, 158, 301 P.2d 135, 136 (1956) ("In the absence of any statutory authority to the contrary, ... it is clear that a county does have both general and specific duties with reference to the highways under its jurisdiction."); *Switzer v. Bd. of County Comm'rs*, 70 Colo. 563, 564–65, 203 P. 680, 681 (1922) ("The board is vested with reasonable discretion as to the modes and methods by which it may exercise the power ... [of] laying out, altering, or discontinuing roads."); *Crossroads West Ltd. Liab. Co. v. Town of Parker*, 929 P.2d 62, 64

(Colo.App.1996) (municipalities have "broad and general police power to institute regulations for the public good," including, for example, traffic regulations); *see also* §§ 30–11–107(1)(h), 30–15–401(1)(h), 42–4–110(1), 42–4–111(1)(g) & (y), 43–2–111(1) & (6), C.R.S.2007.

### B. State Interest in Implements of Husbandry

#### 1. Support for Agricultural Operations

Colorado is a state with strong agricultural ties which maintains a policy of support for agricultural operations. *See* § 35–3.5–101, C.R.S.2007 ("It is the declared policy of the state of Colorado to conserve, protect, and encourage the development and improvement of its agricultural land for the production of food and other agricultural products.... It is the purpose of this article to reduce the loss to the state of Colorado of its agricultural resources by limiting the circumstances under which agricultural operations may be deemed to be a nuisance."); § 35–3.5–102(1)(a) & (b), C.R.S.2007 ("[E]xcept as provided in this section, an agricultural operation shall not be found to be a public or private nuisance if the agricultural operation alleged to be a nuisance employs methods or practices that are commonly or reasonably associated with agricultural production;" specifically including the employment of new technology.); § 39–1–103(5)(a), C.R.S.2007 (providing statutory scheme for favorable tax treatment of agriculture); *Douglas County Bd. of Equalization v. Clarke*, 921 P.2d 717, 720 (Colo.1996) ("Agricultural land in Colorado receives favorable *ad valorem* tax treatment, calculated on the basis of the earning or productive capacity of the land." (citing Colo. Const. art. X, § 3) ); *Ft. Lyon Canal Co. v. Ark. Valley Sugar Beet & Irrigated Land Co.*, 39 Colo. 332, 341, 90 P. 1023, 1027 (1907) (discussing the value of farms in Colorado in context of water rights).

#### 2. Implements of Husbandry

The Uniform Motor Vehicle Law defines an "implement of husbandry" as "[e]very vehicle that is designed, adapted, or used for agricultural purposes," which includes "[h]eavy moveable farm equipment primarily used on farms or in a livestock production facility and not on the highways." § 42–1–102(44), C.R.S.2007.

Defendant asserts, and we agree, that implements of husbandry, such as his agricultural sprinkler system, "are treated uniquely by the state." Numerous statutes reflect the special treatment given to the movement of implements of husbandry on public roads. *See, e.g.,* § 43–5–303, C.R.S.2007 (describing the criminal offense of overflowing a highway with water, but stating that "[a]gricultural crop sprinkler systems upon which generally accepted devices are installed or preventative practices are carried out and when due diligence has been exercised to prevent the end gun from discharging water upon the highway shall not be deemed to be in violation of this section."); § 42–4–510(9), C.R.S.2007 (owners of implements of husbandry which are temporarily moved upon a highway do not need to apply for a permit for vehicles of excess weight and size); § 42–4–235(2)(b)(III), C.R.S.2007 (exempting implements of husbandry from commercial vehicle regulations); § 42–2–102(1)(b), C.R.S.2007 (persons temporarily operating implements of husbandry on the highway do not need to obtain a driver's license); § 42–4–202(2), C.R.S.2007 (penalties for unsafe vehicles regarding identification plates do not apply to implements of husbandry); § 42–20–108(4), C.R.S.2007 (rules and regulations for transporting hazardous materials do not apply to certain farm machinery); § 42–4–237(1)(a), C.R.S.2007 (exempting implements of husbandry from mandatory safety belt law).

Other states with strong agricultural ties give similar special treatment to implements of husbandry. *See, e.g., Prichard v. State,* 529 N.W.2d 621, 624 (Iowa Ct.App.1995) ("The Iowa legislature in its wisdom has recognized the importance of agriculture to rural Iowa and the need to move equipment from place to place. Special provisions have been made for implements of husbandry."); *see also* Annotation, *Construction and Application of Statute or Ordinance Designed to Prevent Use of Vehicles or Equipment Thereof Injurious to the Highway,* 134 A.L.R. 550 (1941) (describing determinations of other jurisdictions that local restrictions

on road use for implements of husbandry and other irregular vehicles are appropriate as long as "reasonable"); *Covington County v. Collins*, 92 Miss. 330, 45 So. 854, 854 (1908) (the occasional use of the highway by a traction engine is generally regarded as lawful, provided due care is used in its operation; but the operation of such engines may become a nuisance if used to an unreasonable extent or in a manner calculated to impede travel).

### C. County Regulation of Implements of Husbandry

■ A county is prohibited from adopting a law that "is in conflict with any state statute." § 30–15–411, C.R.S.2007; *see Colo. Mining Ass'n v. Bd. of County Comm'rs*, 170 P.3d 749, 758 (Colo.App.2007) (*cert. granted* Nov. 13, 2007). Accordingly, defendant contends that, given the state's preferential treatment of implements of husbandry, "the [s]tate has limited the ability of a county to regulate an implement of husbandry," even when on a county road. We agree that, regardless of the county's broad authority over county roads, its prohibition against any movement on a county road of implements of husbandry such as the sprinkler system at issue here is inconsistent with Colorado policy supporting agricultural operations and the statutory scheme facilitating the use of implements of husbandry. Thus, we conclude that Resolution 2008–04 is overly broad and, therefore, invalid.

■ The purpose of the preemption doctrine is to establish a priority between potentially conflicting laws enacted at various levels of government. *Bd. of County Comm'rs v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1059 (Colo.1992). A county ordinance or regulation can be partially or completely preempted when a statute contains express language of preemption, when a statute impliedly evinces a legislative intent to completely occupy a given field, or when the operational effect of the ordinance or regulation would conflict with the application of the statute. *Colo. Mining Ass'n,* 170 P.3d at 754. State preemption by reason of operational conflict arises where the effectuation of a local interest would materially impede or destroy the state interest. *Bowen/Edwards,* 830 P.2d at 1059 (providing the example of a county regulation imposing technical conditions on an activity within the county under circumstances where no such conditions are imposed under the state statutory or regulatory scheme).

Here there is no clear and unequivocal statement of a legislative intent to preempt all regulation by the county of the movement of implements of husbandry on county roads, and the respective interests of both the state and the county are not so irreconcilably in conflict "[a]s to eliminate by necessary implication any prospect for a harmonious application of both regulatory schemes." *Id* at 1058; *see also Colo. Mining Ass'n,* 170 P.3d at 755, 757; *Bainbridge,* 929 P.2d at 711; *Bd. of County Comm'rs v. Martin,* 856 P.2d 62, 65 (Colo.App.1993).

However, because by its plain terms, Resolution 2004–08 acts as a total prohibition of agricultural sprinkler systems on county roads, we conclude for two reasons that its operational effect conflicts with the application of state statutes. *See Bd. of County Comm'rs v. BDS Int'l, LLC,* 159 P.3d 773, 779 (Colo.App.2006) (no fully developed record needed for an operational conflict analysis if on existing record the issue can be decided on its face).

First, we observe that the legislature, while recognizing the traditional authority given to local governments to regulate the movement of vehicles on roads within their respective jurisdictions and allowing local governments to exercise control over the regulation of vehicles on roads not part of the state highway system, has specifically excluded implements of husbandry from the scope of this authority. *Compare* § 42–4–111, C.R.S.2007 (entitled "Powers of local authorities," and setting forth a lengthy list of road and vehicle-related issues over which regulatory authority is granted to local governments), *with* § 42–1–102(44) & (112), C.R.S. 2007 (defining "implement of husbandry" and excluding from the definition of "vehicle" "any implement of husbandry designed primarily or exclusively for use and used in agricultural operations").

Furthermore, although we fully acknowledge the broad powers of the county over all aspects of the movement of traffic on county roads, we may not ignore either the state's general policy supporting the business of farming and agriculture or the particular statutory provisions enacted to facilitate the use of implements of husbandry on public streets and highways, including county roads located, as here, in the rural areas of the state.

These statutory provisions, by their terms, acknowledge that implements of husbandry can be heavy, large, and cumbersome, but to facilitate farming and agriculture, nonetheless must be permitted to temporarily move on public roads. Indeed, under section 42–4–510(1) & (9), C.R.S.2007, as noted above, the state exempts operators of implements of husbandry "temporarily moved upon the highway" from applying for permits, including those required by local authorities, "[t]o operate or move a vehicle or combination of vehicles of a size or weight of vehicle or load exceeding the maximum specified in this article." Thus, the legislature has removed from the authority of the county the discretion to prevent the temporary movement on a highway of an implement of husbandry by the denial of a permit otherwise required of vehicles which, by their size, length, or weight, could obstruct the flow of traffic. If the county cannot restrict the temporary movement of an oversized agricultural sprinkler by denying a permit, it necessarily cannot achieve the same forbidden result via resolution.

Thus, we agree with defendant that because Resolution 2004–08 operates to prohibit all movement of agricultural sprinkler systems onto Logan County roads, as an absolute ban, it is invalid. *See Bowen/Edwards,* 830 P.2d at 1059; *City of Craig v. Hammat,* 809 P.2d 1034, 1036 (Colo.App. 1990); *Fleckman v. City of Greeley,* 673 P.2d 376, 377–78 (Colo.App.1983); *see also Colo. Mining Ass'n,* 170 P.3d at 758–59 (distinguishing between a complete ban on an activity and a ban on the means to execute an activity); *cf. Osborn & Caywood Ditch Co. v. Green,* 673 P.2d 380, 383 (Colo.App. 1983) (injunction absolutely prohibiting land-owner from moving agricultural sprinkler system over easement holder's ditch was too broad and restrictive).

## II. Regulation as Common Law Public Nuisance

Nevertheless, the board asserts, even if Resolution 2004–08 is impermissibly broad, under its express and implied powers over county roads—including but not limited to its authority to protect the safety and condition of its roads—it has the authority to remedy a public nuisance created by the movement of an implement of husbandry, including a sprinkler system, on a county road. Thus, the board contends the trial court erred in dismissing its common law public nuisance claim. We disagree.

■ Initially, we agree with the board that, although Resolution 2004–08 is invalid, the county is not precluded from monitoring, in a far more precise fashion, the movement of sprinkler systems on county roads. As discussed above, we have not determined that all local regulation of the movement of implements of husbandry on county roads is in conflict with state policy, thus, the board may protect county roads so long as its measures are in harmony with the state's interests in the use of implements of husbandry. *See Town of Frederick v. N. Am. Res. Co.,* 60 P.3d 758, 761–62 (Colo.App.2002) (that a complete ban is impermissible does not foreclose all local regulation); *see also People v. Rapini,* 107 Colo. 363, 368–69, 112 P.2d 551, 553–54 (1941) (criminal prosecution allowed when implement of husbandry damaged local road).

■ We also note, however, as referenced above in our discussion of Colorado's policy in support of farming and agriculture, the authority of local governments to regulate public and private nuisances arising from agricultural operations has been limited by statute. § 35–3.5–102(1)(a), C.R.S.2007 ("Except as provided in this section, an agricultural operation shall not be found to be a public or private nuisance if the agricultural operation alleged to be a nuisance employs methods or practices that are commonly or reasonably associated with agricultural production."); *see* § 35–3.5–102(5), C.R.S.2007

("Any ordinance or resolution of any unit of local government that makes the operation of any agricultural operation a nuisance or provides for the abatement thereof as a nuisance under the circumstances set forth in the section is void [with exceptions]."); *see also* Ch. 28, sec. 1, § 25–12–104, 2008 Colo. Sess. Laws —— (H.B. 08–1065 amendment effective Aug. 6, 2008) (prohibiting a county from maintaining a statutory action for noise abatement if the alleged nuisance involves "a farming or ranching activity").

It may be that section 35–3.5–102 would preclude a county from asserting a common law nuisance claim concerning the movement of an implement of husbandry on county roads. However, neither party cited, raised, or argued the effect of this statute either here or in the trial court. Thus, we do not consider it. *See Trevino v. HHL Fin. Servs., Inc.,* 945 P.2d 1345, 1346 n. 1 (Colo.1997) (declining to address issue not raised on appeal); *Shelby Res., LLC v. Wells Fargo Bank,* 160 P.3d 387, 392 (Colo.App.2007) (same).

■ However, for the reasons set forth earlier, we conclude that the mere fact that an operator moves an agricultural sprinkler on a county road does not, without more, establish a public nuisance. *See Docheff v. City of Broomfield,* 623 P.2d 69, 71 (Colo. App.1980) (A common law public nuisance is "[t]he doing of or failure to do something that injuriously affects the safety, health or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public." (quoting *Echave v. City of Grand Junction,* 118 Colo. 165, 170, 193 P.2d 277, 280 (1948)) ). Furthermore, with record support, the trial court found that the county had not shown either current or imminent damage to the road and concluded that no evidence of injury was presented to establish that defendant's use of his sprinkler constituted a nuisance.

■ Moreover, even if the use of an agricultural sprinkler constituted a common law public nuisance—and did not fall under the limitations of section 35–3.5–101—the county is empowered only to abate the nuisance to the extent reasonably necessary. *See Echave,* 118 Colo. at 171, 193 P.2d at 280

("Municipalities do not possess unrestricted power to abate nuisances; abatement is limited to the necessities of the case."). As discussed, because of state policy in support of the use of implements of husbandry, an absolute prohibition of such use is unreasonable as a matter of law.

### III. Regulation Through Criminal Statutes

The board next argues that the trial court erred when it granted summary judgment on its claim for relief based on a violation of criminal statutes, specifically sections 43–5–301 and 18–9–107(1)–(2), C.R.S.2007 (setting out, as an offense against public peace, order, and decency, the crime of and penalty for obstructing a highway or other passageway, and defining "obstruct" to mean "to render impassable or to render passage unreasonably inconvenient or hazardous"). We disagree.

■ An injunction is an extraordinary and discretionary equitable remedy which is available when there is no adequate remedy at law or when it is expressly authorized by statute. *May Dep't Stores Co. v. State ex rel. Woodard,* 863 P.2d 967, 978 (Colo.1993). It is intended to prevent future harm. *Id.* The grant or denial of injunctive relief, "[l]ies within the sound discretion of the trial court and will be reversed only upon a showing of abuse of that discretion." *Scott v. City of Greeley,* 931 P.2d 525, 530 (Colo.App.1996); *see* C.R.C.P. 65.

■ The general rule is that injunctive relief will not be granted to restrain the commission of a crime. However, there are a few specific exceptions. *State v. Tolbert,* 98 Colo. 433, 438, 56 P.2d 45, 47–48 (1936). As relevant here, the state may restrain crime through civil injunction when its interests, or the interests of those entitled to its protection, are "injuriously affected," or when "irreparable injury" would result. *People v. Tool,* 35 Colo. 225, 234, 86 P. 224, 226 (1905) ("[E]quity will afford protection by enjoining crime when rights and interests are injuriously affected thereby."); *Tolbert,* 98 Colo. at 438, 56 P.2d at 47–48 (allowing injunction under criminal statute when, without defendants being restrained, "the state will suffer

irreparable material injury"). Conversely, it is not within the state court's jurisdiction to "[p]revent a criminal act merely because it is criminal, and when it in no way violates a property or civil right ..." *People ex rel. L'Abbe v. District Court*, 26 Colo. 386, 389, 58 P. 604, 605 (1899) (noting that the failure of law enforcement to enforce criminal statutes does not provide grounds for an injunction).

Thus, before such jurisdiction may be exercised, a court must examine "the facts and circumstances of the particular case" to determine whether public rights would be "injuriously affected" or suffer "irreparable injury." *See id.* at 390, 58 P. at 605; *see also Baseline Farms Two, LLP v. Hennings*, 26 P.3d 1209, 1212 (Colo.App.2001) (Under *Rathke v. MacFarlane*, 648 P.2d 648 (Colo. 1982), in order to obtain a preliminary injunction, one factor that a party must establish is "a danger of real, immediate, and irreparable harm.").

Here, with record support, the trial court found that the board had made no showing of present or imminent damage to the road. The court concluded that, even though the board may have had "[t]heoretical power to seek such relief [through criminal statutes], [its] likelihood of success on that basis [was] also extremely weak," and, therefore, the circumstances were "not a proper subject for equitable relief" based on a criminal statute.

Relying on *Conway–Bogue Realty Investments Co. v. Denver Bar Ass'n*, 135 Colo. 398, 410, 312 P.2d 998, 1004 (1957), the board argues that because its action against defendant was on behalf of the public, it was unnecessary for it to prove irreparable injury or an imminent threat thereof. We do not agree.

With three exceptions, a showing of irreparable injury is a requirement for both preliminary and permanent injunctions even when the suit is brought by government officials. *See, e.g., City of Golden v. Simpson*, 83 P.3d 87, 96 (Colo.2004) (discussing permanent injunction); *City of Colorado Springs v. Blanche*, 761 P.2d 212, 217 (Colo.1988) (discussing preliminary injunction).

These exceptions are circumscribed and none apply here:

● This is not a case involving the unlawful practice of law by real estate brokers. *Conway–Bogue*, 135 Colo. at 410, 312 P.2d at 1004.

● There is no state statute relating to highway obstruction that expressly or impliedly eliminates the irreparable injury requirement. *See, e.g., Kourlis v. District Court*, 930 P.2d 1329, 1335 (Colo.1997). Even were we to consider Resolution 2004–08 as the equivalent of a state statute for purposes of eliminating the irreparable injury requirement—an issue not raised and which we need not decide— we have concluded above that, in any event, the resolution was invalid.

● There is no issue here that rises to the level of one "imbued with great public importance," such as in *Lloyd A. Fry Roofing Co. v. State Dept. of Health Air Pollution Variance Bd.*, 191 Colo. 463, 473, 553 P.2d 800, 808 (1976).

Thus, because the requisite showing of injury was not made, we conclude the trial court properly determined that injunctive relief was not warranted by the county's allegations that defendant violated criminal statutes prohibiting the obstruction of a highway.

Based on our disposition, we do not address any remaining issues raised by the parties.

The judgment is affirmed.

Judge STERNBERG * and Judge NEY * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.