**TOWN OF FREDERICK, Plaintiff–Appellant and Cross–Appellee,**

v.

**NORTH AMERICAN RESOURCES COMPANY, Defendant–Appellee and Cross–Appellant.**

No. 01CA0893.

Colorado Court of Appeals, Div. IV.

Aug. 1, 2002.

Samson, Pipis & Marsh, LLC, Richard E. Samson, Gwyneth Ayers, Longmont, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Kuhn, Carnes & Anderson, P.C., Dennis N. Carnes, Carolyn J. Mitchell, Denver, Colorado; Gretchen VanderWerf, P.C., Gretchen VanderWerf, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Geoffrey T. Wilson, Denver, Colorado, for Amicus Curiae Colorado Municipal League.

Kenneth A. Wonstolen, Denver, Colorado, for Amicus Curiae Colorado Oil and Gas Association.

Ken Salazar, Attorney General, Carol J. Harmon, Assistant Attorney General, Denver, Colorado, for Amicus Curiae Colorado Oil and Gas Conservation Commission.

Opinion by Judge VOGT.

The issue in this case is whether, and if so, to what extent, a local government may regulate the drilling of oil and gas wells within its boundaries. Plaintiff, the Town of Frederick, appeals the trial court's summary judgment invalidating certain provisions of its ordinance that required oil and gas operators, including defendant, North American Resources Company (NARCO), to obtain a permit before drilling a well in the Town. NARCO cross-appeals the trial court's determination on summary judgment that the balance of the ordinance was enforceable and that the Town was entitled to injunctive relief and attorney fees. We affirm.

In 1994, the Town enacted an ordinance, codified at art. V, ch. 16 of the Frederick Municipal Code, prohibiting the drilling of oil and gas wells within the town limits unless a special use permit was first obtained.

The ordinance prescribed procedures for applying for a permit, required payment of a $1,000 application fee, and provided that the Town's board of trustees had to approve the application if it conformed to the requirements set forth in the ordinance. These requirements included specific provisions for well location and setbacks, noise mitigation, visual impact and aesthetics regulation, and the like.

The ordinance also prescribed penalties for constructing an oil and gas facility without complying with its terms, authorized the town attorney to institute an action to enjoin or remove such unlawful facility, and provided that the Town was entitled to its costs and attorney fees if it prevailed in any such action.

In 1999, NARCO drilled a well in the Town after having been granted a drilling permit by the Colorado Oil and Gas Conservation Commission (COGCC), but without having applied for a special use permit from the Town. The Town filed suit to enjoin NARCO from operating its well and require it to remove the well and pay all fines associated with its violation of the ordinance. NARCO counterclaimed, seeking a declaratory judgment that the ordinance was unenforceable because it was preempted by state law. Both parties moved for summary judgment.

In a detailed written opinion, the trial court granted each party's motion in part. It concluded that several provisions of the ordinance were invalid because they were in operational conflict with rules promulgated by COGCC, and thus enjoined the Town from enforcing those provisions. However, the court concluded, state law did not preempt the Town's regulatory scheme in its entirety. Because NARCO had not complied with the valid portions of the ordinance, the Town was entitled to an injunction precluding NARCO from operating its well. The

court also awarded the Town its attorney fees and costs pursuant to the terms of the ordinance.

## I. *Background*

### A. *Applicable statutes, Bowen/Edwards, and Voss*

Resolution of the issue presented in this case requires review of the statutes and case law addressing the relationship between local governments' authority over land use issues within their boundaries and the state's authority to regulate oil and gas production throughout Colorado.

As a statutory town, Frederick has the power to enact ordinances not inconsistent with state law that are necessary and proper to provide for the health, safety, prosperity, order, comfort, and convenience of the municipality. *See* § 31–15–103, C.R.S.2001; *Minch v. Town of Mead,* 957 P.2d 1054 (Colo. App.1998). In addition, the Local Government Land Use Control Enabling Act, § 29–20–101, et seq., C.R.S.2001, grants local governments broad authority to plan for and regulate the use of land within their respective jurisdictions.

The state's interest in oil and gas development and operations is expressed in the Oil and Gas Conservation Act, § 34–60–101, et seq., C.R.S.2001, whose declared purposes include promoting the development, production, and utilization of oil and gas resources in the state. The COGCC is charged with enforcing that act and promulgating rules necessary to carry out its provisions.

In 1992, the Colorado Supreme Court addressed the effect of these statutes on local governments' ability to regulate oil and gas operations in two cases, *Board of County Commissioners v. Bowen/Edwards Associates, Inc.,* 830 P.2d 1045 (Colo.1992), and *Voss v. Lundvall Brothers, Inc.,* 830 P.2d 1061 (Colo.1992). In *Bowen/Edwards,* the court held that the Oil and Gas Conservation Act did not totally preempt a county's land use authority over oil and gas operations. In *Voss,* the court held that a home rule city could regulate various aspects of oil and gas operations within the city, but could not totally ban all drilling.

The Town and NARCO agree that the preemption analysis delineated in those two cases controls resolution of the issue presented here.

Where, as here, the issue is one in which both state and local concerns are present, a three-part analysis is applied to determine whether the local ordinance or regulation is preempted by state law. First, the express language of the state statute may indicate state preemption of all local authority over the subject matter. Second, preemption may be inferred if the state statute impliedly evinces a legislative intent completely to occupy a given field by reason of a dominant state interest. Third, a local law may be partially preempted where its operational effect would conflict with the application of the state statute.

■ Applying those preemption principles, the supreme court concluded in *Bowen/Edwards* that the Oil and Gas Conservation Act neither expressly nor impliedly preempted all aspects of a local government's land use authority over land that might be subject to oil and gas development or operations. Regarding the third, or "operational conflict," type of preemption, the court articulated the inquiry as follows: "State preemption by reason of operational conflict can arise where the effectuation of a local interest would materially impede or destroy the state interest. Under such circumstances, local regulations may be partially or totally preempted to the extent that they conflict with the achievement of the state interest." *Bowen/Edwards, supra,* 830 P.2d at 1059 (citation omitted). Concluding that the operational conflicts question must be resolved on an ad hoc basis under a fully developed evidentiary record, the court remanded the case to the trial court for determination of the issue.

In *Voss,* the court applied the *Bowen/Edwards* analysis and further clarified the extent to which a local government may regulate oil and gas drilling. A complete ban was impermissible because it would conflict with the state's interest in efficient production and development of oil and gas resources in a manner preventing waste and protecting the

rights of producers. However, that fact did not foreclose all local regulation:

> If a home-rule city, instead of imposing a total ban on all drilling within the city, enacts land-use regulations applicable to various aspects of oil and gas development and operations within the city, and if such regulations do not frustrate and can be harmonized with the development and production of oil and gas in a manner consistent with the stated goals of the Oil and Gas Conservation Act, the city's regulations should be given effect. We thus do not conclude ... that there is no room whatever for local land-use control over those areas of a home-rule city where drilling for oil, gas, or hydrocarbon wells is about to take place.

*Voss, supra,* 830 P.2d at 1068–69.

### B. The trial court's application of Bowen/Edwards and Voss

Applying the *Bowen/Edwards* and *Voss* analysis in this case, the trial court first rejected NARCO's argument that post–1992 statutory amendments and rules establish that, contrary to *Bowen/Edwards,* all local regulation of oil and gas operations is now impliedly preempted. The court then analyzed the Town's ordinance to determine whether there were operational conflicts between it and the Oil and Gas Conservation Act or the COGCC rules.

The trial court did not agree with NARCO that the entire ordinance was invalid based on operational conflict, but nevertheless concluded that certain sections were in conflict with the state's interest as set forth in the COGCC rules. While those sections thus could not be enforced, the remaining sections were enforceable.

Because the permitting process as a whole was valid and enforceable, NARCO was required to obtain a special use permit before drilling a well, but admittedly did not do so. Accordingly, the Town was entitled to judgment on its claims to enjoin NARCO from drilling or otherwise operating its nonconforming well and to require NARCO either to remove the well or to obtain a special use permit.

### II. Implied Preemption

If, as NARCO contends on cross-appeal, a local government's ability to require permits for oil and gas drilling is now impliedly preempted in its entirety, we need not reach the specific issues raised by the parties regarding operational conflicts. Therefore, we first address the implied preemption issue.

NARCO contends that the trial court erred in declining to invalidate the ordinance in its entirety, either (1) on the basis that post–1992 statutory amendments and COGCC rules governing oil and gas operations establish that state law has now occupied the field, thereby impliedly preempting the Town's ordinance, or (2) on the basis that the ordinance regulates a technical area of oil and gas operations that, under *Bowen/Edwards* and *Voss,* is entirely excluded from the regulatory authority of local governments. We disagree with both contentions.

### A. Post–1992 legislation and rules

■ In *Bowen/Edwards,* the court of appeals had relied on two subsections of the Oil and Gas Conservation Act, § 34–60–106(4) and (11), as manifesting a legislative intent to regulate all phases of oil and gas activity. The supreme court disagreed, concluding that these provisions, read singly or together, did not establish such an implied total preemption. According to the supreme court, the effect of § 34–60–106(11)—which, in its then-existing version, directed the COGCC to "promulgate rules and regulations to protect the health, safety, and welfare of the general public in the drilling, completion, and operation of oil and gas wells and production facilities," Colo. Sess. Laws 1985, ch. 272 at 1129—was simply to vest the COGCC with the authority and responsibility for developing adequate technical safeguards calculated to minimize the risk of injury to the public from oil and gas drilling and production operations.

In 1994, the General Assembly amended § 34–60–106(11) as part of its enactment of S.B. 94–177. Thus, the final phrase of § 34–60–106(11) now reads "in the conduct of oil and gas operations," rather than "in the drilling, completion, and operation of oil and gas

wells and production facilities." In addition, a broad definition of "oil and gas operations," enumerating numerous specific activities relating to drilling and other operations, was added to the Act. Section 34–60–103(6.5), C.R.S.2001.

We do not agree that these amendments establish that, contrary to *Bowen/Edwards,* state law now impliedly preempts all local regulation of oil and gas drilling. The amended language itself does not compel such a conclusion. Further, the legislative declaration at the beginning of S.B. 94–177 includes a statement that "nothing in this act shall be construed to affect the existing land use authority of local governmental entities." Colo. Sess. Laws 1994, ch. 317, sec. 1 at 1978.

Moreover, in 1996 the General Assembly amended § 34–60–106(15), C.R.S.2001, which addresses the powers of the COGCC, by adding the following language:

> No local government may charge a tax or fee to conduct inspections or monitoring of oil and gas operations with regard to matters that are subject to rule, regulation, order, or permit condition administered by the commission. *Nothing in this subsection (15) shall affect the ability of a local government to charge a reasonable and nondiscriminatory fee for inspection and monitoring for* road damage and *compliance with* local fire codes, *land use permit conditions,* and local building codes.

Colo. Sess. Laws 1996, ch. 88 at 346 (emphasis added). The last sentence of § 34–60–106(15) indicates that the General Assembly anticipated that local governments could issue land use permits that included conditions affecting oil and gas operations. This added language further supports the conclusion that the General Assembly did not intend to preempt all local regulation of oil and gas operations.

Following the passage of S.B. 94–177, the COGCC promulgated extensive regulations dealing with oil and gas operations. While these expanded regulations may give rise to additional areas of operational conflict with analogous local regulations, we decline to conclude that they so occupy the field as to establish an implied preemption of all local regulation of such operations.

#### B. *Regulation of technical activities*

■ In support of its argument that the Town's ordinance is wholly preempted because it regulates technical activities, NARCO relies on language from *Bowen/Edwards* recognizing that

> the efficient and equitable development and production of oil and gas resources within the state *requires uniform regulation of the technical aspects of drilling,* pumping, plugging, waste prevention, safety precautions, and environmental restoration. Oil and gas production is closely tied to well location, with the result that the *need for uniform regulation extends also to the location and spacing of wells.*

*Bowen/Edwards, supra,* 830 P.2d at 1058 (emphasis added)(citing *Voss* ).

We do not agree with NARCO that this statement, without more, shows that the supreme court viewed state law as preempting any local regulation affecting oil and gas drilling.

The *Bowen/Edwards* court did not say that the state's interest "requires uniform regulation of drilling" and similar activities. Rather, according to the court, it "requires uniform regulation of *the technical aspects* of drilling" and similar activities. The phrase "technical aspects" suggests that there are "nontechnical aspects" that may yet be subject to local regulation. Indeed, the supreme court indicated as much when it stated elsewhere in *Bowen/Edwards* that it found nothing in the relevant statutes to support an implied "total preemption of a county's authority to enact land-use regulations applicable to oil and gas development and operational activities within the county." *Bowen/Edwards, supra,* 830 P.2d at 1059.

Similarly, although the *Bowen/Edwards* excerpt quoted above cited *Voss* for the proposition that there was a need for uniform regulation of the location and spacing of wells, *Voss* itself recognized that a city could still enact "land-use regulations applicable to various aspects of oil and gas development and operations within the city," as long as the regulations could be harmonized with the state's goals. *Voss, supra,* 830 P.2d at 1069.

As discussed below, certain provisions of the Town's ordinance do regulate technical aspects of drilling and related activities and thus could not be enforced. However, other provisions of the ordinance, such as those governing access roads and fire protection plans, do not purport to regulate technical aspects of oil and gas operations, even though they may give rise to operational conflicts with a state regulation addressing the same subject and thus be preempted for that reason.

Thus, we reject NARCO's argument that the entire ordinance was preempted under *Bowen/Edwards* because it regulated technical areas of oil and gas drilling and operations.

### III. *Operational Conflicts*

Having concluded that the Town's ordinance is not impliedly preempted, we next consider whether operational conflicts between its provisions and the COGCC's regulations render all or part of the ordinance unenforceable. The Town argues on appeal that the trial court erred in concluding that certain provisions conflicted with state regulations and thus could not be enforced. NARCO contends on cross-appeal that the entire ordinance should have been invalidated based on operational conflicts. We do not agree with either party.

### A. *The trial court's ruling*

■ Under *Bowen/Edwards*, state preemption by reason of operational conflict can arise where the effectuation of a local interest would "materially impede or destroy the state interest." *Bowen/Edwards, supra,* 830 P.2d at 1059.

The *Bowen/Edwards* court concluded that, while the county regulations before it appeared to be designed to harmonize with the state's interest, a remand was required so that the issue could be resolved on a fully developed evidentiary record. As guidance for the trial court in applying the operational conflicts test on remand, the supreme court stated:

[T]here may be instances where the county's regulatory scheme conflicts in operation with the state statutory or regulatory scheme. For example, the operational effect of the county regulations might be to impose technical conditions on the drilling or pumping of wells under circumstances where no such conditions are imposed under the state statutory or regulatory scheme, or to impose safety regulations or land restoration requirements contrary to those required by state law or regulation. To the extent that such operational conflicts might exist, the county regulations must yield to the state interest.

*Bowen/Edwards, supra,* 830 P.2d at 1060.

The trial court here noted at the outset that the Town's ordinance was drafted with *Bowen/Edwards* and *Voss* in mind and, like the county regulations in *Bowen/Edwards*, was intended to harmonize with the state's objectives and interests in oil and gas development. It then found that certain provisions of the ordinance were invalid under the *Bowen/Edwards* operational conflicts test, but that the overall scheme did not "impede or destroy the state's objectives" and was thus enforceable.

Specifically, the court found that the ordinance provisions setting forth the requirements for obtaining a special use permit, §§ 16–113 to 16–116, did not destroy the state's objectives even though they could result in a delay in the commencement of drilling. The inspection fee included in the ordinance was specifically authorized pursuant to § 34–60–106(15) and thus was not in conflict with state law. The $1,000 application fee also did not conflict with state law, as there was no state rule prescribing the amount that a local government could charge for such a fee.

Citing the supreme court's admonition in *Voss* that local regulations should be given effect if they do not frustrate and can be harmonized with the state's goals, the trial court also upheld ordinance provisions regarding building permits for above-ground structures, access roads, emergency response costs, and the like. It found no corresponding state rule that gave rise to an operational conflict with these provisions.

The court did, however, find that certain sections of the ordinance created "impermis-

sible operational conflicts" with COGCC rules and therefore could not be enforced. The ordinance provision imposing setback requirements for the location of wells within the Town limits, § 16–118, conflicted with COGCC Rule 603(a) and (b), 2 Code Colo. Regs. 404–1, which requires lesser setbacks in non-high-density areas. Similarly, the ordinance provision regulating noise abatement, § 16–120, conflicted with COGCC Rule 802 in that it permitted the Town to require noise abatement measures beyond those required by the state. Ordinance § 16–121, regulating the visual impact of oil and gas operations, likewise included mandatory requirements that conflicted with the detailed requirements in COGCC Rules 318, 803, 804, 1002, and 1003. Finally, the ordinance was preempted on the basis of operational conflict to the extent it incorporated COGCC's rules and then gave the Town the authority to assess penalties in addition to those provided for by the COGCC for violations of those rules.

### B. The Town's appeal

■ The Town argues that, in striking down certain provisions of its ordinance, the trial court ignored the requirement of Bowen/Edwards and Voss that courts should attempt to harmonize and give effect to local regulations if possible. Citing Ray v. City & County of Denver, 109 Colo. 74, 121 P.2d 886 (1942), for the proposition that there is no conflict between an ordinance and a statute where the ordinance simply goes further in its prohibition than the statute, the Town contends that the fact that its ordinance goes further than the state regulations in some areas did not give rise to an irreconcilable operational conflict. Similarly, the Town relies on National Advertising Co. v. Department of Highways, 751 P.2d 632 (Colo.1988), for the proposition that there is no operational conflict here because its ordinance does not authorize any act that the state prohibits.

■ The Town's reliance on Ray and National Advertising for these propositions is misplaced. The operational conflicts test announced in Bowen/Edwards and Voss controls here. Under that test, the local imposition of technical conditions on well drilling

where no such conditions are imposed under state regulations, as well as the imposition of safety regulations or land restoration requirements contrary to those required by state law, gives rise to operational conflicts and requires that the local regulations yield to the state interest. Bowen/Edwards, supra, 830 P.2d at 1060.

Such is the case with the setback, noise abatement, and visual impact provisions invalidated by the trial court here. Thus, the ordinance sections that the trial court invalidated are preempted on the basis of operational conflict.

■ Because the Town did not raise the issue in the trial court, we decline to address its contention on appeal that the portion of its setback regulation addressing the placement of buildings remains enforceable even if the balance of that regulation is preempted. See Estate of Stevenson v. Hollywood Bar & Cafe, Inc., 832 P.2d 718 (Colo.1992)(arguments not presented to trial court will not be considered on appeal).

■ We are likewise unpersuaded by the Town's argument that its enforcement of COGCC rules does not conflict with state law, as the trial court found, but in fact supports and bolsters those rules. In support of this argument, the Town cites § 34–60–114, C.R.S.2001, which allows "any person or party in interest adversely affected" to sue to enjoin violations of COGCC rules if the COGCC has failed to do so. However, § 34–60–114 provides that such adversely affected party must first notify the COGCC in writing of such violation and request the COGCC to sue. The Town's ordinance includes no such notification requirement, but instead simply provides for a $1,000 fine, imprisonment, or both, for any violation of its provisions, and further authorizes the town attorney to sue to enjoin nonconforming structures. Thus, the ordinance does not constitute the sort of private party enforcement contemplated under § 34–60–114.

Further, the imposition by the Town of a fine of up to $1,000 per day conflicts, at least in part, with the COGCC's schedule of fines

for violation of its rules. *See* COGCC Rule 523.

Finally, § 34–60–106(15) expressly states that the COGCC may not assign its enforcement authority and that "[n]o local government may charge a tax or fee to conduct inspections or monitoring of oil and gas operations with regard to matters that are subject to rule, regulation, order, or permit condition administered by the [COGCC]." In our view, this statute demonstrates that the General Assembly did not contemplate that local governments could assess fees for violations of COGCC rules.

■ The Town also contends for the first time in its reply brief that its ordinance can be upheld as a valid exercise of its police power. Amicus curiae Colorado Municipal League argues that the trial court's construction of "operational conflict" impermissibly imputed to the General Assembly a delegation of authority to the COGCC, in violation of Colo. Const. art. V, § 35. Because these arguments were not raised in the trial court, we do not address them. *See In re Estate of Stevenson v. Hollywood Bar & Cafe, Inc., supra; Flagstaff Enterprises Construction, Inc. v. Snow,* 908 P.2d 1183 (Colo.App.1995)(arguments raised for first time in reply brief will not be considered).

In sum, we conclude that the trial court did not err in invalidating certain provisions of the Town's ordinance on the basis that they were in operational conflict with state law.

## C. *NARCO's cross-appeal*

■ We also reject NARCO's contention that the entire permitting process, as well as the injunctive relief authorized by the ordinance and awarded by the court, is preempted on the basis of operational conflicts.

NARCO concedes that a local government may have a permitting process if it is limited to local land use concerns, and acknowledges that the Town's ordinance provisions requiring an operator to obtain building permits for above-ground structures, maintain access roads, submit emergency response and fire protection plans, and regulate the distances that buildings must be set back from existing wells are matters that a local government may legitimately regulate pursuant to its land use authority. However, NARCO argues that the permitting process as a whole conflicts with the COGCC's broad authority, under the expanded definition of oil and gas operations in § 34–60–103(6.5) and the comprehensive regulations promulgated since 1994, to regulate when, where, and how an operator may drill. We disagree.

We have already concluded that the amended statute and rules do not impliedly preempt all local regulation of anything having to do with oil and gas drilling. NARCO has not identified any additional specific operational conflicts between COGCC rules and the Town's ordinance provisions, beyond those cited by the trial court, that would support a finding of preemption on the basis of operational conflict.

Nor are we persuaded by NARCO's argument that the Town's permitting process impedes the state's interest in oil and gas development because it allows the Town's board of trustees to attach conditions to a special use permit without any standards to govern the exercise of their discretion. As noted, § 16–115 of the ordinance provides that the board of trustees "shall approve" an application if the requirements summarized in that section are met. We do not read the ordinance as permitting the board of trustees to impose conditions beyond those specific requirements. Moreover, as the trial court noted, § 16–115 includes procedures allowing an applicant to challenge any condition inconsistent with state requirements. Thus, although the Town's process may delay drilling, the ordinance does not allow the Town to prevent it entirely or to impose arbitrary conditions that would materially impede or destroy the state's interest in oil and gas development.

We likewise do not agree with NARCO that the injunctive relief contemplated in the ordinance and awarded by the trial court

results in an operational conflict between the ordinance and state law.

The trial court enjoined NARCO from drilling or operating its well and ordered it to "take steps to either remove the well or obtain a special use permit to continue operation of the well." In its subsequent order denying NARCO's motion to amend the judgment, the court rejected NARCO's argument that such injunctive relief was invalid, stating:

> By choosing not to follow the permitting process set forth in the [Frederick Municipal] Code, [NARCO] has violated local law. It necessarily follows that there must be some consequence for such action, and since the law at issue is a land use regulation, injunctive relief is appropriate. The state's objectives in regulating the oil and gas industry are not in conflict with [or] destroyed or impeded by requiring operators that ignore local regulations to stop operating their wells until such time as the local regulations have been complied with. The state's objectives do not include condoning violation of local land use regulations.

We agree with the trial court. It is illogical to conclude that a local government retains the authority to regulate in certain areas relating to oil and gas operations, but has no ability to enforce such regulations. Allowing a local government to invoke the assistance of the court to enforce its regulations does not materially impede or destroy the state's interest in the development of oil and gas resources. Conversely, allowing an operator to disregard legitimate local requirements with impunity would in fact amount to total preemption of local regulation relating to oil and gas operations, contrary to *Bowen/Edwards* and *Voss*.

## IV. *Attorney Fees*

Finally, we agree with the trial court that the Town was the prevailing party on its essential claim arising from NARCO's violation of the ordinance. Thus, it was properly awarded its attorney fees and costs in accordance with § 16–130(f) of the ordinance, which authorizes such recovery.

The judgment is affirmed.

Judge NEY and Judge ROTHENBERG concur.