**BOARD OF COUNTY COMMISSIONERS OF GUNNISON COUNTY, Colorado, Plaintiff–Appellant and Cross–Appellee,**

v.

**BDS INTERNATIONAL, LLC., Defendant,**

and

**Colorado Oil and Gas Conservation Commission, Intervenor– Appellee,**

and

**Gunnison Energy Corporation, Intervenor–Appellee and Cross–Appellant.**

**No. 04CA1679.**

Colorado Court of Appeals, Div. II.

Dec. 14, 2006.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2006.

David Baumgarten, County Attorney, Gunnison, Colorado; Sullivan Green Seavy, LLC, Barbara J.B. Green, John T. Sullivan, Boulder, Colorado, for Plaintiff–Appellant and Cross–Appellee.

No Appearance for Defendant–Appellee.

John W. Suthers, Attorney General, Carol Harmon, Assistant Attorney General, Denver, Colorado, for Intervenor–Appellee.

Brownstein Hyatt & Farber, P.C., Timothy R. Beyer, Wayne F. Forman, Mark J. Mathews, Denver, Colorado, for Intervenor–Appellee and Cross–Appellant.

Colorado Municipal League, Geoffrey T. Wilson, Denver, Colorado, for Amicus Curiae Colorado Municipal League.

Hall & Evans, L.L.C., Beth A. Dickhaus, Denver, Colorado, for Amicus Curiae Colorado Counties, Inc.

Kenneth A. Wonstolen, Denver, Colorado, for Amicus Curiae Colorado Oil & Gas Association.

Opinion by Judge TAUBMAN.

Plaintiff, Board of County Commissioners of Gunnison County (the County), appeals from a partial summary judgment in favor of defendant, BDS International, LLC. (BDS), and intervenor, the Colorado Oil and Gas Conservation Commission (COGCC), in which the trial court invalidated numerous county oil and gas regulations based on state preemption. Intervenor Gunnison Energy Corporation (GEC) cross-appeals the partial denial of summary judgment, in which the trial court concluded the county regulations are not preempted by federal law. We affirm in part, reverse in part, and remand.

BDS and GEC are oil and gas companies involved in the development of and exploration for natural gas resources located in the Grand Mesa, Uncompahgre, and Gunnison National Forest in Gunnison County. They operate natural gas wells under both federal and state drilling permits, subject to federal and state regulation.

BDS was the principal defendant in the trial court. After the County filed its notice of appeal, the case was remanded to the trial court, which granted GEC's motion to intervene. By agreement, GEC is pursuing the appeal on behalf of BDS and itself.

In 2003, the County filed suit in federal court seeking injunctive and declaratory relief against BDS. The court dismissed the complaint for lack of subject matter jurisdiction.

The County refiled the complaint in state court, seeking to enjoin BDS from maintaining or drilling wells on federal property within Gunnison County and seeking an order requiring BDS to comply with the County's Temporary Regulations for Oil and Gas Operations (County Regulations). The trial court subsequently granted COGCC's motion to intervene.

BDS and COGCC then filed motions for summary judgment. COGCC challenged the County Regulations on their face, and the trial court issued a thorough, comprehensive order granting summary judgment in part and denying it in part. The trial court held numerous County Regulations are preempted by state law, including the following portions of § 1–104, Application Submittal Requirements for Oil and Gas Permits:

(1) Wildlife and Wildlife Habitat Analysis, § 1–104 (B16);

(2) Vegetation, § 1–104 (B17);

(3) Water Quality, § 1–104 (B19);

(4) Drainage and Erosion Control Plan, § 1–104 (B21).

The trial court also held the following portions of § 1–107, Oil and Gas Operation Standards, are preempted:

(5) Drainage and Erosion Control, § 1–107A;

(6) Wildlife and Wildlife Habitat, § 1–107D;

(7) Livestock and Livestock Grazing, § 1–107E;

(8) Recreation Impacts, § 1–107F;

(9) Water Quality, § 1–107G;

(10) Waterbody Setbacks, § 1–107H;

(11) Cultural and Historic Resources, § 1–107I;

(12) Wildfire Hazard, § 1–107J;

(13) Geologic Hazards, § 1–107K;

(14) Impact Mitigation Costs, § 1–107L;

(15) Access to Records, § 1–107M;

(16) Financial Guarantees, § 1–107O.

The trial court also held that part of another regulation is preempted by state law:

(17) Permit Duration, § 1–111.

The trial court held the remaining County Regulations are not preempted by state or federal law.

The trial court certified the summary judgment as a final order pursuant to C.R.C.P. 54(b) "with respect to those items that the Court found to be facially invalid," and the County appeals that summary judgment. GEC cross-appeals the trial court's denial of summary judgment, arguing the County

Regulations are completely preempted by federal law.

## I. Standard of Review

We review the trial court's summary judgment de novo. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814 (Colo. 2004).

Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988). The moving party has the initial burden of showing no genuine issue of material fact exists.

The burden then shifts to the nonmoving party to establish the existence of a triable issue of fact. *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023 (Colo.1998).

We view all evidence properly before the trial court in the light most favorable to the nonmoving party, give the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the evidence, and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Luttgen v. Fischer*, 107 P.3d 1152 (Colo.App.2005).

## II. Types of State Preemption

■ A county regulation and a state statute may both remain in effect as long as their express or implied conditions do not irreconcilably conflict with each other. *Bd. of County Comm'rs v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045 (Colo.1992). A state statute may preempt a county regulation where (1) the statute expressly preempts all local authority over the subject matter, (2) the implied legislative intent is to occupy completely a given field, or (3) the county regulation's operational effect would conflict with application of the state statute. *Bowen/Edwards, supra.*

Here, the trial court did not find express or implied state preemption. However, it invalidated certain County Regulations based on operational conflicts with the state regulatory scheme.

■ Under *Bowen/Edwards*, state preemption by reason of operational conflict can arise where the effectuation of a local interest would "materially impede or destroy the state interest." *Bowen/Edwards, supra*, 830 P.2d at 1059.

Elaborating on the operational conflicts test, the *Bowen/Edwards* court stated:

> [T]here may be instances where the county's regulatory scheme conflicts in operation with the state statutory or regulatory scheme. For example, the operational effect of the county regulations might be to impose technical conditions on the drilling or pumping of wells under circumstances where no such conditions are imposed under the state statutory or regulatory scheme, or to impose safety regulations or land restoration requirements contrary to those required by state law or regulation. To the extent that such operational conflicts might exist, the county regulations must yield to the state interest.

*Bowen/Edwards, supra*, 830 P.2d at 1060.

In *Bowen/Edwards*, the supreme court held a trial court must determine the extent of an operational conflict "on an adhoc basis under a fully developed evidentiary record." *Bowen/Edwards, supra*, 830 P.2d at 1060. The supreme court did not define the necessary components of a full evidentiary record.

## III. Operational Conflicts

The County argues that the trial court erred in entering summary judgment because it did not have a sufficient evidentiary record of any operational conflicts between the County Regulations and state law. We agree in part.

Initially, we note that because BDS did not apply for a permit, we narrow the focus of our inquiry. In *California Coastal Commission v. Granite Rock Co.*, 480 U.S. 572, 107 S.Ct. 1419, 94 L.Ed.2d 577 (1987), the United States Supreme Court held that because Granite Rock did not apply for a permit, "[the regulatory authority's] identification of a possible set of permit conditions not preempted by federal law is sufficient to rebuff Granite Rock's facial challenge to the

permit requirement." *Granite Rock, supra,* 480 U.S. at 589, 107 S.Ct. at 1429. The Colorado Supreme Court later explained this rule:

> We interpret *Granite Rock* to hold that for purposes of the federal standing requirement a party's failure to seek a permit may well serve to narrow the focus of the party's facial challenge to a permit requirement, but that the seeking of a permit is not a threshold standing requirement for challenging a permit regulation.

*Bowen/ Edwards, supra,* 830 P.2d at 1054 n. 5

■ Therefore, in determining whether the County Regulations are in operational conflict with state statute or regulation, we will construe the County Regulations, if possible, so as to harmonize them with the applicable state statutes or regulations. Where no possible construction of the County Regulations may be harmonized with the state regulatory scheme, we must conclude that a particular regulation is invalid.

Based on this standard, we conclude that certain County Regulations, on their face, conflict with state law. However, we also conclude that a majority of the County Regulations invalidated by the trial court may possibly be harmonized with the state regulatory scheme and, therefore, an evidentiary hearing is necessary to determine the extent of any operational conflicts in this case.

■ In reaching this conclusion, we necessarily reject GEC's contention that a same-subject analysis applies to determine whether there is an operational conflict. GEC maintains that if a state statute or regulation concerns a particular aspect of oil and gas operations, any county regulations in that area are automatically preempted under operational conflicts preemption. Contrary to GEC's argument, we conclude that *Bowen/Edwards, supra,* and *Town of Frederick v. North American Resources Co.,* 60 P.3d 758, 764 (Colo.App.2002), do not support this conclusion.

### A. Preempted Regulations

First, the County argues the trial court erred in invalidating County Regulations that imposed financial requirements, §§ 1–107L and 1–107O, and that required operators to give the County access to their records, § 1–107M. We disagree.

■ As noted, a statute will preempt a regulation where the effectuation of a local interest would materially impede or destroy the state interest. *Bowen/Edwards, supra.* Therefore, a county may not impose technical conditions on the drilling or pumping of wells under circumstances where no such conditions are imposed by state law or regulation. *Bowen/Edwards, supra.* In addition, a county may not impose fines that are inconsistent with those imposed by the COGCC. *Town of Frederick, supra.*

The COGCC rules, 2 Code Colo. Regs. 404–1, create a procedure for assessing fines "which shall be imposed only by order of the Commission." COGCC Rule 523(a). The COGCC rules also require operators to provide financial security in the form of bonds, to ensure that operators perform certain activities, including site reclamation and remediation. COGCC Rule 700, et seq. They impose specific bond amounts based upon per well costs and set maximum financial requirements.

■ County Regulations §§ 1–107L, Impact Mitigation Costs, and 1–107O, Financial Guarantees, impose financial requirements upon operators and allow the County to set the amount required by a security agreement that is "no less than 125 percent of the estimated cost of the conditions to be performed, and payable on demand to the County."

We conclude these County Regulations impose financial requirements on the oil and gas operator that are inconsistent with the state regulation's financial caps. Furthermore, the County cannot reserve the right to determine financial requirements where the COGCC has reserved for itself the sole authority to impose fines on oil and gas operations. Thus, the trial court properly concluded these County Regulations are preempted.

■ As to access to records, § 34–60–106(1)(e), C.R.S.2006, provides that the oil and gas operators must keep records for five

years and keep the records "available for examination by the [COGCC], or its agents." COGCC Rule 205 creates a similar requirement.

County Regulation § 1–107M, Access to Records, requires that oil and gas operators keep appropriate books and records and keep those records available for inspection by the County for at least five years.

We conclude the state statute and rule exclude the County by omission as an entity authorized to inspect the records. *Zab, Inc. v. Berenergy Corp.*, 136 P.3d 252, 261 (Colo. 2006) (expressio unius est exclusio alterius). Therefore, the County Regulation is inconsistent with the state regulatory scheme. Accordingly, the trial court properly concluded this regulation is preempted by state law.

### B. Regulations Requiring Evidentiary Hearing

The County argues the trial court erred in invalidating, without an evidentiary hearing, County Regulations pertaining to water quality, soil erosion, wildlife, vegetation, and livestock based on preemption by § 34–60–106(2)(d), C.R.S.2006, and certain COGCC rules. The County also argues the trial court erred in invalidating County Regulations pertaining to cultural and historic resources, geologic hazards, wildfire protection, recreation impacts, and permit duration based on preemption by § 34–60–106(11), C.R.S.2006, and certain other COGCC rules. We agree with the County that an evidentiary hearing is required with respect to these regulations to determine whether operational conflicts exist.

Under § 34–60–106(2)(d), the COGCC has authority to regulate:

Oil and gas operations so as to prevent and mitigate significant adverse environmental impacts on any air, water, soil, or biological resource resulting from oil and gas operations to the extent necessary to protect public health, safety, and welfare, taking into consideration cost-effectiveness and technical feasibility.

Section 34–60–106(11) provides: "The [COGCC] shall promulgate rules and regulations to protect the health, safety, and welfare of the general public in the conduct of oil and gas operations."

Pursuant to this authority, the COGCC promulgated rules to increase the safety of oil and gas workers and the surrounding communities. COGCC Rule 600, et seq.

### 1. Water Quality

Protection of public water supplies is a matter of both state and local concern and may be regulated by local governments. *Town of Carbondale v. GSS Props., LLC*, 140 P.3d 53 (Colo.App.2005) *(cert. granted* July 17, 2006, 2006 WL 1976546). In *Town of Carbondale*, GSS contended that a municipal ordinance regulating water pollution was facially preempted by state law. A division of this court held that an evidentiary hearing was necessary to determine whether there was an operational conflict between state and local water quality controls. *Town of Carbondale, supra.*

County Regulations §§ 1–104 (B19), 1–107G, and 1–107H impose water quality standards and waterbody setbacks. Here, the general grant of authority in § 34–60–106(2)(d) to regulate environmental impacts on water does not on its face conflict with the County Regulations. Therefore, an evidentiary hearing is necessary to determine the existence of any operational conflicts.

### 2. Soil Erosion

The state reclamation regulations impose requirements for the management and reclamation of soils moved or disturbed by oil and gas operations. COGCC Rule 706. They also "establish the proper reclamation of the land and soil affected by oil and gas operations and ensure the protection of the topsoil." COGCC Rule 1001, et seq.

County Regulation § 1–104(B21), Drainage and Erosion, requires that the oil and gas operation provide "a plan that identifies existing and proposed drainage patterns and the methods for controlling erosion during construction and operation phases of the Operation." Section 1–107A provides: "The Oil and Gas Operation shall not cause significant erosion or sedimentation and shall be con-

ducted in accordance with the drainage and erosion control plan."

Because the County's drainage and erosion regulations attempt to promote the state's interest in protecting the land and topsoil without imposing conflicting requirements, they are not, on their face, contrary to state law, and a hearing is required to determine any operational conflicts.

### 3. Wildlife and Vegetation

■ County Regulation § 1–104 (B16), Wildlife and Wildlife Habitat Analysis, requires applicants to provide an analysis of existing wildlife and sensitive wildlife habitats and proposed mitigation efforts. Section 1–107D, Wildlife and Wildlife Habitat, states that "Oil and Gas Operation shall not cause significant degradation of wildlife or sensitive wildlife habitat." Section 1–104 (B17), Vegetation, requires that the oil and gas operation provide "[a] written description of the type, character, and density of existing and proposed vegetation on the parcel, a summary of the impacts of the Operation on vegetation, and proposed mitigation."

Although these regulations address the same subject matter as § 34–60–106(2)(d), it is not clear that every possible formulation of these environmental regulations would operationally conflict with the state regulatory scheme. Therefore, we conclude the trial court erred in invalidating these county regulations without an evidentiary hearing.

### 4. Livestock

■ The state regulations provide that during and after the drilling operations, "the operator, at the request of the surface owner, will install a fence around the reserve pit." COGCC Rule 1002(a)(2).

County Regulation § 1–107E, Livestock and Livestock Grazing, provides: "The Oil and Gas Operation shall not cause significant impact to livestock, grazing permits, or grazing permittees. Fencing or other agreements between private grazing operations and the Oil and Gas operator may be used to satisfy this requirement."

This County Regulation addresses the same subject matter as § 34–60–106(2)(d).

However, the County Regulation in this area appears to impose nearly identical requirements, requiring no more or less than the state rules. Therefore, we cannot conclude this County Regulation is facially preempted by state law, and a hearing is necessary to determine any operational conflict.

### 5. Geologic Hazards and Cultural and Historic Resources

■ County Regulation § 1–107K, Geologic Hazards, requires: "The Oil and Gas Operation shall not cause significant risk of geologic hazards." Using similar language, § 1–107I, Cultural and Historic Resources, provides: "[T]he Oil and Gas Operation shall not cause significant degradation of cultural or historic resources."

Although § 34–60–106(11) may encompass these same subject areas, the County Regulations are not, on their face, contrary to the state statute and regulations in this area.

Nonetheless, COGCC argues that it must first designate areas containing historic, natural, or archaeological resources as "areas of state interest" before a local government may regulate mineral resources in such areas. *See* § 24–65.1–202(1)(c), C.R.S.2006. Indeed, the statutory scheme contemplates local government involvement in the protection of historical and natural resources.

*See* § 24–65.1–202(3), C.R.S.2006. Accordingly, an evidentiary hearing is necessary to determine whether the County Regulations in this area are in operational conflict with state law.

### 6. Wildfire Protection

■ The County argues the trial court erred in invalidating its wildfire protection regulation because that regulation might be harmonized with the state statutes. We agree.

COGCC and GEC concede the County may regulate fire and emergency response. However, to the extent that the County Regulation concerning wildfire protections goes beyond "fire response," it may be in operational conflict with state law. *See Town of Frederick, supra,* 60 P.3d at 764 ("[O]ther provisions of the ordinance, such as those govern-

ing access roads and *fire protection plans,* do not purport to regulate technical aspects of oil and gas operations, even though they may give rise to operational conflicts with a state regulation addressing the same subject and thus be preempted for that reason." (emphasis added)).

Although a division of this court has invalidated a county regulation that required a fire protection plan, that decision was based upon the specific facts of that case. *Oborne v. Bd. of County Comm'rs,* 764 P.2d 397 (Colo.App. 1988).

County Regulation § 1–107J, Wildfire Hazards, provides: "The Oil and Gas Operation shall not cause a significant risk of wildfire hazard." Although § 34–60–106(11) arguably relates to this same subject area, it does not preclude all local regulation relating to wildfires. The COGCC has promulgated a comprehensive set of regulations to minimize the risk of wildfires, including regulating the use of liquid fuels, smoking, and open fires; requiring the use of fire extinguishers; and requiring training of personnel in the use of fire control equipment. COGCC Rules 603(e)(8), 606A. However, the County Regulation in this area is not, on its face, contrary to these rules.

We conclude that so long as the fire protection plan requirements are not contrary to the requirements of state law, the County may regulate in the area of fire protection. An evidentiary hearing is thus necessary to determine whether the specific County Regulation here is in operational conflict with the COGCC rules.

### 7. Recreation

County Regulation § 1–107F, Recreation Impacts, states: "[T]he Oil and Gas Operation shall not cause a significant degradation in the quality or quantity of recreational activities in the County such as hunting, hiking, skiing, or related activities."

Although § 34–60–106(11) may encompass this same subject area, the recreation impacts regulation is not, on its face, contrary to the state regulation. In addition, COGCC Rule 603(e) extensively regulates oil and gas operations in high density recreational areas.

Whether the County Regulation may conflict with the state statute and regulation is a question of fact that must be resolved at an evidentiary hearing.

### 8. Permit Duration

Finally, the County argues the trial court erred in invalidating in part the permit duration regulation. We agree.

The trial court held that "[w]ith respect to § 1–111, permit duration, with a six-month permit from the County contrasted with the state's 1 year, the Court agrees with Intervenor that the permit duration must be the same as the State's to avoid a conflict."

Contrary to the trial court's ruling, the COGCC rule and the County Regulation both appear to provide that the permits expire after one year, if operations have not commenced.

County Regulation § 1–111, Permit Duration, states the operation shall be commenced within one year of the permit issuance and be completed within one year of commencement, unless the County agrees to a greater period. The state rule requires operations to commence within one year of approval. COGCC Rule 303(h). Therefore, the County Regulation regarding permit duration is not, on its face, in operational conflict with the state regulation, and an evidentiary hearing as to this regulation is necessary.

## IV. Federal Preemption

Having concluded that the trial court erred in granting summary judgment invalidating certain County Regulations, we next examine whether, as GEC contends on cross-appeal, those regulations are impliedly preempted by federal law. To the extent this issue is properly before us, we conclude that the County Regulations are not so preempted.

### A. Order to Show Cause

Initially, we consider GEC's response to an order to show cause why the trial court's denial of its motion for summary judgment was a final, appealable order insofar as it held the County Regulations are not preempted by federal law. We conclude the denial is not appealable, but the substance of

GEC's cross-appeal may be considered as an alternative basis for upholding the trial court's judgment.

▮▮▮ Generally, only final orders are appealable. C.A.R. 1(a)(1); *Gergel v. High View Homes, L.L.C.,* 58 P.3d 1132 (Colo.App. 2002). A trial court's denial of summary judgment is usually not a final appealable order. *Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244 (Colo.1996). A trial court may certify the granting of a partial summary judgment as a final appealable order. *Pham v. State Farm Mut. Auto. Ins. Co.,* 70 P.3d 567 (Colo.App.2003). However, the trial court retains jurisdiction to rule on those claims not certified as final appealable orders, *Musick v. Woznicki,* 136 P.3d 244 (Colo.2006), and thus, we may not address those claims.

Here, the trial court certified the summary judgment as a final order pursuant to C.R.C.P. 54(b) "with respect to those items that the Court found to be facially invalid."

▮▮▮ GEC argues that the trial court resolved nearly all the contested matters in this case, and, therefore, the trial court did not retain jurisdiction to hear GEC's claim that all the County Regulations are preempted by federal law. In the alternative, GEC maintains that we should consider its cross-appeal in the interest of judicial economy. We disagree.

The trial court limited its C.R.C.P. 54(b) certification to those County Regulations that it held were facially invalid. GEC's claim is not encompassed within that certification because it seeks review of the trial court's denial of summary judgment and is not limited to the trial court's facial invalidation of certain County Regulations.

Nonetheless, we consider the arguments raised in GEC's cross-appeal to the extent that they may provide an alternative basis for upholding the trial court's summary judgment as to the County Regulations it found to be facially invalid.

▮▮▮ A correct judgment will not be disturbed on review, even if the reason for the trial court's ruling may be wrong. *Norwest*

*Bank Lakewood v. GCC P'ship,* 886 P.2d 299 (Colo.App.1994).

▮▮▮ If the trial court erred by invalidating certain County Regulations based on state preemption in its summary judgment, federal preemption could be an alternative ground for supporting that judgment. Therefore, we consider GEC's cross-appeal to that extent.

## B. GEC's Cross–Appeal

GEC contends that Congress impliedly preempted local regulation of oil and gas activities by enacting a comprehensive regulatory scheme governing those areas. Considering this contention only with respect to the regulations invalidated by the trial court, we disagree.

Initially, we note that although Colorado courts have previously held that the state regulatory scheme does not impliedly preempt all local regulation of oil and gas operations, *Bowen/Edwards, supra; Town of Frederick, supra,* Colorado's appellate courts have not previously addressed whether the federal regulatory scheme impliedly preempts all local regulation of oil and gas operations on federal lands.

▮▮▮ To determine whether federal law preempts a state law or a county regulation, the same preemption analysis applies. *See Hillsborough County v. Automated Med. Labs., Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985).

▮▮▮ Relying on the Property Clause of the United States Constitution, a panoply of federal laws concerning the use and disposition of federal lands, and case law from other jurisdictions, GEC argues that the County may not implement any regulations concerning oil and gas operations on federal lands. We are not persuaded.

Under the relevant part of the Property Clause, "[t]he [C]ongress shall have power to dispose and make all needful rules and regulations respecting the territory or other property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. Additionally, Congress has regulated the use and disposition of federal lands under the Mineral Leas-

ing Act of 1920, the Mineral Leasing Act for Acquired Lands of 1947, the Federal Onshore Oil and Gas Leasing Reform Act of 1987, and the Energy Policy Act of 2005 (collectively MLA), 30 U.S.C. §§ 187–287; the National Forest Management Act (NFMA), 16 U.S.C. §§ 1600–1614; and the Federal Land Policy Management Act (FLPMA), 43 U.S.C. §§ 1701–1784.

Because these statutes do not explicitly preempt local law, GEC relies on the doctrine of implied preemption, which applies when "federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Green Mountain R.R. v. Vermont,* 404 F.3d 638, 641 (2d Cir. 2005) (quoting *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992)).

GEC asserts that because neither the MLA nor the NFMA requires that oil and gas operators obtain local government approval or adhere to local government regulations, Congress intended that such local regulations are preempted. GEC cites numerous provisions of the MLA that grant the Bureau of Land Management broad powers with regard to oil and gas drilling on federal lands. Similarly, GEC asserts that the NFMA also establishes a wideranging management scheme under which the Forest Service is given ultimate authority over regulation of service uses on national forest lands.

In *Gulf Oil Corp. v. Wyoming Oil & Gas Conservation Commission,* 693 P.2d 227 (Wyo.1985), the Wyoming Supreme Court rejected a similar contention. First, it noted that a state retains jurisdiction over national forest land within its boundaries and that the state is free to enforce its criminal and civil laws on that land. *Gulf Oil Corp., supra,* 693 P.2d at 235 (citing *Kleppe v. New Mexico,* 426 U.S. 529, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976)). Second, the *Gulf Oil* court relied on 30 U.S.C. §§ 187 and 189, part of the MLA, which indicate an absence of Congressional intent to assert exclusive control over federal lands leased for mineral development. Specifically, 30 U.S.C. § 189 provides in pertinent part: "Nothing in this chapter shall be

construed or held to affect the rights of the States *or other local authority* to exercise any rights which they may have...." (Emphasis added.) Similarly, 30 U.S.C. § 187 provides that leases on federal lands may not contain provisions that conflict with the laws of the state in which the leased property is located.

In *Texas Oil & Gas Corp. v. Phillips Petroleum Co.,* 406 F.2d 1303 (10th Cir.1969), the court similarly concluded that the MLA did not provide for exclusive federal jurisdiction to regulate the exploration, development, and conservation of federal lands for oil and gas.

Indeed, in the *Gulf Oil* case, after surveying decisions from other states, the Wyoming court concluded, "We have found no cases striking down state regulations on the ground that Congress by enacting mining and environmental protection laws intended to occupy the field of environmental regulation and mineral development on federal land." *Gulf Oil, supra,* 693 P.2d at 236.

Further, nothing in the Energy Policy Act of 2005 leads us to reach a contrary conclusion. There, Congress enacted provisions to streamline onshore oil and gas permitting practices on federal lands, but did not specify that local governments were prohibited from regulating in this area.

We also reject GEC's contention that other case law militates in favor of a conclusion that federal law preempts all local oil and gas regulation on federal lands. GEC relies on *Ventura County v. Gulf Oil Corp.,* 601 F.2d 1080 (9th Cir.1979), *aff'd mem.,* 445 U.S. 947, 100 S.Ct. 1593, 63 L.Ed.2d 782 (1980). There, the court held that the Supremacy Clause precluded enforcement of certain zoning ordinances against a lessee because the federal government had authorized the specific use of federal land and Ventura County could not prohibit that use either temporarily or permanently in an attempt to substitute its judgment for that of Congress. *See Ventura County, supra,* 601 F.2d at 1084. However, *Ventura County* is inapposite, because the court there engaged in an operational conflicts analysis, and that analysis is not

applicable to GEC's implied preemption argument.

Likewise, GEC relies on *Brubaker v. Board of County Commissioners*, 652 P.2d 1050 (Colo.1982), in which the Colorado Supreme Court held that a county could not deny a permit on the ground that the county's specific application of the local regulations prohibited activities authorized by federal legislation. That case is distinguishable because, as the supreme court noted, it was "not presented with a challenge to the facial validity of the [county] zoning ordinances or with the question of whether the appellants could be required to apply for a permit under those ordinances." *Brubaker v. Bd. of County Comm'rs, supra*, 652 P.2d at 1059.

Rather, we agree with the trial court that the decision in *California Coastal Commission v. Granite Rock, supra*, demonstrates that Congress did not intend to preempt all local regulation in this area. There, the Supreme Court rejected a facial challenge to a permit requirement imposed by the California Coastal Commission. The Supreme Court concluded that Forest Service regulations implemented under the MLA did not constitute an attempt to preempt state law, but instead appeared to assume that those submitting plans of operation would comply with state laws.

Accordingly, we conclude that neither the federal statutory scheme nor the case law relied upon by GEC supports the conclusion that Congress intended to preempt all local regulation in the area of oil and gas operations.

The trial court's summary judgment is affirmed insofar as it holds the County Regulations are not invalid because of federal implied preemption. The judgment is also affirmed insofar as it invalidates County Regulations §§ 1–107L, 1–107M, and 1–107O concerning fines, financial guarantees, and access to records because they operationally conflict with state statutes or regulations. The summary judgment is reversed as to the remaining County Regulations invalidated by the trial court, and the case is remanded so that the finder of fact may determine whether those County Regulations that do not, on their face, operationally conflict with state law nonetheless are in operational conflict with state law in the circumstances presented here.

VOGT and NEY *, JJ., concur.