Opinion by JUDGE HAWTHORNE
¶ 1 This case concerns the propriety of fees imposed by the Town of Milliken on active oil and gas wells for site safety and security inspections conducted by the Town's police department. We conclude that the plain language of section 34-60-106(15), C.R.S.2012, which is part of the Oil and Gas Conservation Act, prohibits the Town from imposing such fees. Accordingly, we affirm the summary judgment entered for Kerr-McGee Oil & Gas Onshore LP.
I. Facts and Procedural History
¶ 2 Beginning in 1983, the Town enacted a series of ordinances that imposed fees on oil and gas wells within the Town's boundaries. See, e.g ., Milliken Land Use Code Ordinance 159 (1982).
¶ 3 In 1996, the General Assembly amended existing state oil and gas law by enacting House Bill 96-1045, titled "An Act Concerning the Prohibition of Certain Local Government Assessments on Oil and Gas Well Operations." Ch. 88, 1996 Colo. Sess. Laws 346; see Town of Frederick v. N. American Resources Co ., 60 P.3d 758, 763 (Colo.App.2002). As relevant here, the new legislation, which is codified in part at section 34-60-106(15), reads:
No local government may charge a tax or fee to conduct inspections or monitoring of oil and gas operations with regard to matters that are subject to rule, regulation, order, or permit condition administered by the [Oil and Gas Conservation] [C]ommission. Nothing in this subsection (15) shall affect the ability of a local government to charge a reasonable and nondiscriminatory fee for inspection and monitoring for road damage and compliance with local fire codes, land use permit conditions, and local building codes.
¶ 4 In 2003, the Town enacted another ordinance concerning oil and gas wells. Milliken Land Use Code Ordinance 480, § 16-9-10 et seq. (2003). The 2003 ordinance authorized the Town to inspect "wells and accessory equipment and structures ... to determine compliance with applicable provisions of this Article, the Milliken Uniform Fire Code, the Milliken Uniform Building Code and all other applicable Town health or safety standards." Id. § 16-9-30(b). The Town also imposed an annual $400 "inspection fee" for each well within its boundaries that had not been plugged or abandoned. Id. § 16-9-30(c). It is undisputed that the Town has never conducted the inspections described in that provision.
¶ 5 In 2008, the Town enacted an ordinance that imposed an annual $400 "security inspection fee" on each active oil and gas well within its boundaries to offset the costs incurred by its police department for the additional "security checks" that the well sites require. See id . § 16-9-185. Specifically, the ordinance stated that the well sites are *473 attractive nuisances for children, destinations for romantic and drug-related activity, targets for graffiti, and present hazardous conditions of potentially cataclysmic proportions. Id . § 16-9-185(a). It is undisputed that the Town's police officers have conducted such security checks on a regular basis since before 2003.
¶ 6 In 2010, the Town repealed and replaced the article of the Town's land use code that included both the 2003 inspection fee provision and the 2008 security inspection fee provision. The replacement article authorized the Town to inspect all "wells, accessory equipment and structures ... to determine compliance with applicable safety and security provisions of this Article, the adopted Fire and Building Codes, and other applicable Town security standards and regulations including any conditions of a special use permit." The replacement article also imposed an annual $400 "security fee" on active oil and gas wells within the Town's boundaries.
¶ 7 In 2010, the Town filed suit against Kerr-McGee-and other oil and gas companies that are not parties to this appeal-seeking to collect "Petroleum Site Security Fees" that the Town had assessed against Kerr-McGee for the active wells that it had operated within the Town's boundaries from 2003 onward.
¶ 8 Kerr-McGee filed a motion for summary judgment, arguing that the security inspection fees were invalid for four reasons: (1) the Town lacked the statutory authority to impose the fees; (2) the fees violated the prohibition against municipal oil and gas fees in section 34-60-106(15) ; (3) the fees unlawfully singled out oil and gas production for disparate treatment; and (4) the Town's attempt to collect fees incurred before 2009 violated the prohibition against retrospective laws.
¶ 9 The district court granted Kerr-McGee's motion and entered summary judgment in its favor. In a detailed written opinion, the court concluded that the Town lacked the statutory authority to impose the security inspection fees. The Town appeals.
II. Analysis
¶ 10 The Town contends that the district court erred in concluding that it lacked the statutory authority to impose the security inspection fees. We do not address this argument because we conclude that section 34-60-106(15) prohibits the Town from imposing the fees. Accordingly, the district court properly entered summary judgment in Kerr-McGee's favor. See Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe, 107 P.3d 402, 406 (Colo.App.2004) ( "[W]e may affirm the trial court's ruling based on any grounds that are supported by the record.").
¶ 11 We review de novo a district court's grant of summary judgment. In re Estate of Johnson, 2012 COA 209, ¶ 8, 304 P.3d 614. Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists, and the moving party is legally entitled to summary judgment. West Elk Ranch, L.L.C. v. United States, 65 P.3d 479, 481 (Colo.2002).
¶ 12 We also review matters of statutory interpretation de novo. L & R Exploration Venture v. Grynberg, 271 P.3d 530, 533 (Colo.App.2011). When construing a statute, our primary goal is to ascertain and give effect to the General Assembly's intent. Id. We do this by looking first to the statute's plain language, giving words and phrases their plain and ordinary meaning. Id. We also consider the statute as a whole to give consistent, harmonious, and sensible effect to all of its parts. Id.
¶ 13 As a preliminary matter, we note that this case does not concern the Town's authority to conduct safety and security inspections of oil and gas well sites within its boundaries. Indeed, section 34-60-106(15)'s last sentence "supports the conclusion that the General Assembly did not intend to preempt all local regulation of oil and gas operations." N. American Resources Co., 60 P.3d at 763 ; see § 31-15-401, C.R.S.2012 (outlining municipalities' general police powers); cf. City of Golden v. Ford, 141 Colo. 472, 479, 348 P.2d 951, 954 (1960) ("Nor do we imply any limitation upon the traditional but statutory rights of municipalities to prevent disturbances of the peace and to maintain law and order by *474 appropriate police action. It is only when the city's acts or regulations attempt to interfere with or cover, as here, a field preempted by the state or which is of state-wide concern that they must fail."). Thus, our inquiry is limited to whether the Town may impose fees for its security inspections.
¶ 14 The Oil and Gas Conservation Act, §§ 34-60-101 to - 129, C.R.S.2012, vests authority to regulate the oil and gas industry at the state level in a single administrative body, the Oil and Gas Conservation Commission (the Commission). See § 34-60-105(1), C.R.S. 2012; Bd. of Cnty. Commis. v. Bowen/Edwards Assocs., Inc., 830 P.2d 1045, 1048 (Colo.1992). As discussed, the General Assembly amended the Oil and Gas Conservation Act in 1996 to prohibit local governments from imposing inspection fees on oil and gas companies "with regard to matters that are subject to rule, regulation, order, or permit condition administered by the commission" except for "reasonable and nondiscriminatory fee[s] for inspection and monitoring for road damage and compliance with local fire codes, land use permit conditions, and local building codes." § 34-60-106(15).
¶ 15 Here, the Town does not claim that its security inspection fees-whether imposed pursuant to the 2003, 2008, or 2010 ordinances-fall within section 34-60-106(15)'s exception for fees imposed for inspecting for road damage or compliance with local fire codes, land use permit conditions, or local building codes. See id . Thus, we must determine whether the Town's security inspection fees are for "inspections or monitoring of oil and gas operations with regard to matters that are subject to rule, regulation, order, or permit condition administered by the commission," as section 34-60-106(15) prohibits. Id. We conclude that they are.
¶ 16 The Town repeatedly refers to the fees as "security and safety inspection fees" and explains that its security and safety inspections consist of inspecting oil and gas well sites for trespassers, vandalism, criminal activity, and first alert signs of dangerous conditions. However, oil and gas well site safety and security are matters subject to rule, regulation, order, or permit condition administered by the Commission. See, e.g., § 34-60-106(11)(a)(II), C.R.S.2012 (the Commission shall promulgate rules "to protect the health, safety, and welfare of the general public in the conduct of oil and gas operations"); Oil and Gas Conservation Comm'n Rules 603(e)(7) (setting forth specific requirements for fencing of well sites "[f]or security purposes"); Oil and Gas Conservation Comm'n Rules 201 (rules and regulations are promulgated to, among other things, protect public safety); Oil and Gas Conservation Comm'n Rules 306(d)(1)(A)(i) (the Commission shall consult with the Colorado Department of Health and Environment on a site location when a local government requests an assessment based on concerns regarding public health, safety, welfare, or environmental impact). Accordingly, section 34-60-106(15) prohibits the Town from imposing fees for its safety and security inspections.
¶ 17 Nevertheless, the Town argues that its fees are not prohibited by section 34-60-106(15) because its inspections differ from those conducted by the Commission:
The [Commission] ... does not perform daily monitoring of active oil and gas well sites for safety and security inspections similar to those conducted by the Town's police department. The Town's police department does not physically go onto the well sites to conduct its inspections as representatives for [the Commission] would do for their compliance inspections. Rather, the Town's police department checks the oil and gas well sites for trespassers, signs of vandalism, criminal activity, odors, smoke, fire or any other first alert signs of danger.
¶ 18 However, it is irrelevant whether the Commission actually conducts inspections like those performed by the Town's police department. The relevant inquiry is whether the Town's inspections concern "matters that are subject to rule, regulation, order, or permit condition administered by the commission." § 34-60-106(15). The statute's plain language does not limit its application to matters on which the Commission has already promulgated rules, regulations, orders, or permit conditions, and we decline to read such a limitation into the statute. See A.M. v. A.C., 2013 CO 16, ¶ 20, 296 P.3d 1026 *475 (declining to read words into a statute that do not appear on its face).
¶ 19 Because we conclude that section 34-60-106(15) prohibits the Town from imposing the security inspection fees at issue here, we need not address whether the Town would otherwise have the statutory authority to impose such fees, whether the fees are discriminatory or violate equal protection principles, or whether the fees are an unlawful excise tax.
¶ 20 The summary judgment is affirmed.
JUDGE TAUBMAN and JUDGE GRAHAM concur.